LORINO v. NEW ORLEANS BASEBALL & AMUSEMENT CO., INC.

____

(March 23, 1931.   Opinion and Decree.)

_____

Noah Lord, N. Morgan Woods II, of New Orleans, attorneys for plaintiff, appellant.

Wm. H. Talbot, of New Orleans, attorney for defendant, appellee.

JANVIER, J.   Defendant, the owner and operator of a baseball park in New Orleans, is sought by plaintiff to be held liable for injuries sustained as a result of being struck on the head by a batted ball during the practice immediately preceding a game conducted by defendant, and to attend and view which game plaintiff had paid admission.

In the baseball park are seats of varying degrees of safety and comfort.  Plaintiff, in order to save the additional charge made for seats in the grandstand, in which stand there are many seats protected against dangers from foul balls or from balls improperly thrown, had chosen to go into the "bleachers," which is in the uncovered section and in which cheaper seats are afforded, in front of which seats there is practically no protection against the dangers to which we have already referred.

When plaintiff entered the "bleachers," the preliminary practice was already in progress, and, while he was looking around in an effort to determine just what seat would suit him best, a foul ball was hit which struck him on the side of the head and fractured two of the bones of his jaw.

It is contended on behalf of plaintiff that, since there was in front of the section in which he was about to secure a seat a small wire screen about five feet in height, he was justified in assuming that the screen was all that was required to afford him complete protection, and that, if there was danger of balls being knocked over that screen, defendant should have erected a higher one.

Defendant maintains, on the other hand, that, since there were available other seats in which plaintiff would have been fully protected from such dangers, he, by voluntarily choosing a seat in an unprotected section, assumed such risks as might be attended upon such a selection. Defendant also contends that plaintiff was guilty of negligence, in that he did not keep his eyes on the players, and thus was not aware of the approach of the ball,

which he could easily have dodged, had he been on the lookout.

It is well known, as the evidence demonstrates, that it is not possible, at baseball games, for the ball to be kept at all times within the confines of the playing field. Errors must inevitably occur and foul balls must frequently be knocked, and on any such occasion there is danger that the ball may enter that portion of the park occupied by the spectators. Those who fear such dangers may, as we have said, secure protection in those seats in front of which screens are erected, and which screens extend from the ground to the roof and afford complete safety. Those who do not elect to take advantage of such protection assume the risks of such obvious dangers.

That plaintiff was familiar with the possibilities of such an occurrence is shown by his testimony to the effect that he had attended other baseball games and had been in this particular park on at least two prior occasions.

The nearest point of the section known as the "bleachers" is shown to be some 158 feet from the "home plate," which is the spot at which the batter stands, and at this distance the danger is not so excessive as to require anything more than a low screen to protect spectators against the terrific force of fast-moving low balls direct from the bat sometimes known as "line drives." Had the injury here resulted from such a blow, and had the ball entered through a defective screen, the legal situation would have been entirely different. We would then have been confronted with a situation similar to that presented to the court in Edling v. Kansas City Baseball & Exhibition Co., 181 Mo. App. 327, 168 S. W. 908, in which, to quote from plaintiff's brief, "plaintiff chose a seat behind a screen and a foul ball passed through the defective screen and broke plaintiff's nose." As we have said, however, here a different case is presented. We are in thorough accord with the views which we find expressed in Wells v. Minneapolis Baseball & Athletic Association, 122 Minn. 327, 142 N. W. 706, 707, 46 L. R. A. (N. S.) 606, Ann. Cas. 1914D, 922, in which the court said:

"It has been frequently held that one who invites the public to places of amusement, such as theaters, shows, and exhibitions, must exercise a high degree of care for the safety of those invited. As to stairways, platform, walks, and other structures, it may be said that the duty is somewhat similar in degree and nature to that owing from a common carrier to its passengers. Thompson on Negligence, secs. 995 and 996; Scott v. University of Mich. Athletic Ass'n, 152 Mich. 684, 116 N. W. 624, 17 L. R. A. (N. S.) 234, 125 Am. St. Rep. 423, 15 Ann. Cas. 515. But this rule must be modified when applied to an exhibition or game which is necessarily accompanied with some risk to the spectators. Baseball is not free from danger to those witnessing the game. But the perils are not so imminent that due care on the part of the management requires all the spectators to be screened in. In fact, a large part of those who attend prefer to sit where no screen obscures the view. The defendant has a right to cater to their desires. We believe that as to all who, with full knowledge of the danger from thrown or batted balls, attend a baseball game the management cannot be held negligent when it provides a choice between a screened in and an open seat; the screen being reasonably sufficient as to extent and substance."

In Blakeley v. White Star Line, 154 Mich. 635, 118 N. W. 482, 483, 19 L. R. A. (N. S.) 772, 129 Am. St. Rep. 496, the court said:

"It is knowledge common to all that in these games hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside the lines of the diamond, and visitors standing in position that may be

reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk."

In Crane v. Kansas City Baseball & Exhibition Co., 168 Mo. 301, 153 S. W. 1076, 1077, the court said:

"In view of the facts that the general public is invited to attend these games, that hard balls are thrown and batted with great force and swiftness, and that such balls often go in the direction of the spectators, we think the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls, for the use of patrons who desired such protection.

"Defendants fully performed that duty when they provided screened seats in the grand stand, and gave plaintiff the opportunity of occupying one of those seats. It is unnecessary to consider the question of whether defendants were bound to have a protected seat available for the use of plaintiff. We are not dealing with a case where the patron was compelled to occupy an unprotected place or not see the game, but with a case where he was offered a choice between a protected and an unprotected seat and, with full knowledge of the risks and dangers of the situation, voluntarily chose the latter."

Whether plaintiff was guilty of negligence in standing in an unprotected section without keeping his attention focused on the players is a matter which we find it unnecessary to determine, since we believe that the fact that plaintiff, by selecting a seat in that section, assumed the risk of all such accidents; but, since it is undisputed that such occurrences are most frequent, it would seem to be a more or less dangerous practice to fail to pay attention to the play.

We believe that the trial court, in finding for defendant and dismissing the suit, was correct.

The judgment appealed from is affirmed.