Opinion by
Montgomery, J.,
On the evening of June 6, 1962 Mr. and Mrs. Anthony Iervolino, appellees, attended a night baseball game between the Los Angeles Dodgers and the Pittsburgh Pirates at Forbes Field in the City of Pittsburgh. They arrived during the bottom or last half of the second inning and sat in box seats on the ground floor of the stands along the first base line, seven or eight rows back from the bottom of the stands behind the “dug out” used by the Pittsburgh players. It was stipulated that the seat occupied by Mrs. Iervolino was 94.6 feet in a direct line from home plate. However, the closest distance by direct line between her seat and the first base line does not appear. Mrs. Iervolino had been attending such contests over a period of fifteen years and was aware that foul balls were frequently hit into the stands among the spectators.
On the occasion under consideration Don Hoak, a right-handed batter, came to bat and hit several balls foul. He then hit another one along the first base line which curved into the stands striking the wifeappellee under the eye. The time between the batter striking the ball with his bat and the ball striking Mrs. Iervolino was almost instantaneous, giving her little time to avoid it, although other spectators did do so.
The appellant-defendant had no protecting screen erected in front of the seat occupied by Mrs. Iervolino although there was one erected directly behind home plate.
Honorable Robert van der Voort, the learned trial judge, submitted the case to the jury on but one possibility of negligence: i.e., was it negligence for *332 the defendant to invite a patron to a sports event and view a baseball game from a position where she was exposed to a hard projectile traveling 94% feet in a split second? The jury returned a verdict of $10,000 for the wife-plaintiff and $1,000 for her husband, on which judgments were entered following the dismissal of a motion for judgment n.o.v. in defendant’s favor or a new trial. These appeals are from those judgments.
We are of the opinion that the lower court was in error in submitting this case to the jury and that judgment must be entered for the appellant on the authority of Schentzel v. Philadelphia National League Club, 173 Pa. Superior Ct. 179, 96 A. 2d 181 (1953), cited with approval in Taylor v. Churchill Valley Country Club, 425 Pa. 266, 228 A. 2d 768 (1967), and the principles therein enumerated. Without repeating those principles we must point out that a jury is not permitted to speculate or guess. The burden rests on the plaintiffs in such cases to prove by a fair preponderance of the evidence that the defendant failed to exercise reasonable care in the erection or maintenance of its baseball park commensurate with the risk involved; and in sustaining that burden they must meet the test generally adhered to in this Commonwealth with respect to methods and appliances employed in business by proving that the defendant deviated from ordinary standards. In the absence of such proof the question of negligence is not for the jury. No such proof appears anywhere in this record. Therefore the trial court erroneously permitted this jury to determine what safety measures, if any, this defendant should have taken for the protection of its customers prior to plaintiffs’ entry into its park. Without evidence to establish a guide the jury’s conclusions were conjectural, a guess as to what sections of the stands should *333 have been protected; by what type of protection; from what type of foul balls the protection should have been given, those that were in direct line from the batter, those that may have curved or arced, those that were hit high, the sight of which might be lost in the sun or lights, those which might have struck and caromed off of other parts of the stands or other obstruction, etc.
However, there is a further reason why judgment must be entered for the defendant. That is because the plaintiffs assumed the risks incident to the game. Mr. Chief Justice Bell, in Taylor v. Churchill Valley Country Club, supra, indicated that this reason is an “even more important reason” than the failure to prove negligence. The risk of being struck by a foul ball hit during the regular play of a game is one of those risks and is recognized not only in the Schentzel case, supra, but in every other jurisdiction throughout the United States.[1] Mr. Justice Musmanno, writing for the ma *334 jority in Cummings v. Nazareth Borough, 427 Pa. 14, 233 A. 2d 874 (1967), recognized this principle and said at page 23, “There is no analogy between the dangers of a baseball game and those attendant upon a swimmer in a pool. The baseball fan knows that foul balls are a routine part of the game. Indeed foul balls are counted as strikes except when the batter already has two strikes. The baseball fan knows that foul balls often fly into or over the grandstand and that if a player of the opposite side catches the ball before it falls to the ground, this automatically retires the batter.”
Those cases relied on by the appellees to negate the conclusion that they assumed the risk are readily distinguishable by the fact that in each of them the incident occurred outside the regular play of the game. In Cincinnati Baseball Club Co. v. Eno, 112 Ohio St. 175, 147 N.E. 86 (1925), the incident occurred during a practice session between the two games of a “double header” when numerous balls were being used; and in Maytnier v. Rush, 80 Ill. App. 2d 336, 225 N.E. 2d 83 (1967), a ball was thrown from the “bull pen” where a possible replacement pitcher was practicing “warmup” pitches during the course of the regular play when and where another ball was being used. Obviously a spectator is not expected to follow intently balls that are thrown or batted outside the regular play of the game when his attention is fixed on the ball in regular play or when the game is not in progress. Therefore, he cannot be held to assume the risk of being hit by *335 balls being used outside tbe regular play. In sucb cases tbe issue of negligence and contributory negligence is generally for tbe jury.
In view of our conclusion that tbe defendant is entitled to judgment in its favor, we deem it unnecessary to discuss its reasons for a new trial.
Judgments reversed and entered for tbe appellant-defendant.

 See Crane v. Kansas City Baseball and Exhibition Co., 168 Mo. App. 301, 153 S.W. 1076 (1913) ; Kavafian v. Seattle Baseball Club Assn., 105 Wash. 219, 181 P. 679 (1919) ; Quinn v. Recreation Park Assn., Court of Appeals 1st Dist. of California, 35 P. 2d 605 (1934) ; Brisson v. Minneapolis Baseball & Athletic Assn., 185 Minn. 507, 240 N.W. 903 (1932) ; Lorino v. New Orleans Baseball and Amusement Co., 16 La. App. 95, 133 So. 408 (1931) ; Blackhall v. Capital District Baseball Assn., 154 Misc. 640, 278 N.Y.S. 649 (1935) ; Ivory v. Cincinnati Baseball Club Co., 62 Ohio App. 514, 24 N.E. 2d 837 (1939) ; Cates v. Cincinnati Exhibition Co., 215 N.C. 64, 1 S.E. 2d 131 (1939) ; Brummerhoff v. St. Louis National Baseball Club, Court of Appeals of Missouri, 149 S.W. 2d 382 (1941) ; Keys v. Alamo City Baseball Club, Court of Appeals of Texas, 150 S.W. 2d 368 (1941) ; Hunt v. Thomasville Baseball Co., 80 Georgia App. 572, 56 S.E. 2d 828 (1949) ; Emhardt v. Perry Stadium, Inc., 113 Ind. App. 197, 46 N.E. 2d 704 (1943) ; Jones v. Alexander Baseball Assn., Inc., 50 So. 2d 93 (La. 1951) ; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W. 2d 318 (1942) ; Erickson v. Lexington Baseball Club, 233 N.C. 627, 65 S.E. 2d 140 (1951); McNiel v. Fort Worth Baseball Club, 268 S.W. 2d 244 (Tex. 1954) ; Shaw v. Boston American League Baseball Co., 325 Mass. 419, 90 N.E. 2d 840 *334 (1950) ; Brown v. San Francisco Ball Club, Inc., 99 Cal. App. 2d 484, 222 P. 2d 19 (1950) ; Baker v. Topping, 222 N.Y.S. 2d 658 (1961) ; Robert v. Deposit Central School District, 237 N.Y.S. 2d 680 (1963) ; Maytnier v. Rush, 80 Ill. App. 2d 336, 225 N.E. 2d 83 (1967).
See also the discussion and annotation at 142 A.L.R. 858 at 871.