380 A.2d 387

### Evelyn M. JONES

v.

### THREE RIVERS MANAGEMENT CORPORATION and Pittsburgh Athletic Company, Inc., Appellants.

Superior Court of Pennsylvania.

Argued April 12, 1977.

Decided Dec. 2, 1977.

84

---

William A. Pietragallo, Pittsburgh, with him Donald W. Bebenek, Pittsburgh, for appellants.

Clyde P. Bailey, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from the lower court's denial of appellants' motion for judgment non obstante veredicto or alternatively, a new trial. We hold that the lower court erred in not entering a judgment n. o. v. in favor of the appellants and, therefore, reverse.

At trial the appellee established that on July 16, 1970, she and a friend, one Janet Glanville, attended opening night at Three Rivers Stadium in Pittsburgh, Pennsylvania. The appellee was a seasoned baseball observer, having attended baseball games at Forbes Field, the old home field of the Pittsburgh Pirates, since she was a child. Both ladies arrived at the stadium at approximately 6:00 p. m., two hours before the scheduled start of the game. They testified that they arrived at such an early time at the behest of the management of Three Rivers who had invited the public to come early in order to inspect the new stadium and view the inaugural ceremonies that were scheduled to precede the game. They entered through Gate A and, after talking to an usher, proceeded to their right, under a gate which had been raised to permit free pedestrian passage, to an area of the inner concourse [1] from which they could view the new facility from behind a four foot wall. The appellee and her friend stopped at a point that overlooked the field from above the Pirate bull pen area and immediately within right field foul territory. From behind that four foot wall the appellee was able to see most of the field, most of the seats, the scoreboard, and some players on the field. After approximately two minutes the appellee and friend decided to purchase something to eat. As they turned away from the wall the appellee heard someone yell "Watch!" and she was then struck on the left eye by a baseball. The baseball had been hit by Al Oliver, a Pittsburgh Pirate, who was standing in the batters' cage at home plate taking batting practice.

1. This inner concourse is an interior walkway which encircles the entire stadium. It is along this walkway that a person can proceed to any area of the stadium. In order to arrive at the seating area a patron would merely have to walk through a short passage which connects the inner concourse and the seats.

Oliver had apparently hit one of the pitched balls into right field. The fly ball, however, curved right into the foul area at the last moment and travelled over the wall into the area where the appellee was standing. The appellee testified that she did not see the baseball at any time.

At the close of the plaintiff's case the appellants moved for a directed verdict and a compulsory nonsuit on the ground that no negligence on the part of the appellants had been shown and, secondly, on the basis that the appellee had assumed the risk of incurring such injuries.[2] The trial judge, while agreeing that no negligence on the part of the appellants had been shown,[3] denied the motion for directed verdict or non-suit solely on the basis of *Iervolino v. Pittsburgh Athletic Co.,* 212 Pa.Super. 330, 243 A.2d 490 (1968). The appellants presented no evidence and rested. The case was then submitted to the jury which returned a verdict against both appellants in the amount of $125,000.00. The trial judge subsequently refused appellants' motion for judgment n. o. v. and for a new trial for the same reason.

In *Iervolino* the wife-appellee was hit by a baseball which travelled into the foul area along the first base line during the regular course of the ball game. Our Court held that, as a matter of law, Mrs. Iervolino failed to satisfy her burden of proving by a fair preponderance of the evidence that the Pittsburgh Athletic Co. deviated from the ordinary standards with respect to methods and appliances employed in the business. Consequently, we held that absent such proof the issue of negligence was not for the jury and it was thus error for the lower court to submit the case to the jury. It was on that basis that judgment was entered in favor of the Pittsburgh Athletic Company. Judge Montgomery however, went on to discuss the doctrine of assumption of risk as an additional reason for entering judgment for Pittsburgh Athletic Club. In doing so, he stated that:

2. Because we hold that appellee failed to prove any negligent conduct on the part of the appellants we need not rule on the merits of the arguments concerning the affirmative defense of assumption of risk.

3. Notes of Testimony at 81.

Obviously a spectator is not expected to follow intently balls that are thrown or batted outside the regular play of the game when his attention is fixed on the ball in regular play or when the game is not in progress. Therefore, he cannot be held to assume the risk of being hit by balls being used outside the regular play. In such cases the issue of negligence and contributory negligence is generally for the jury. *Iervolino v. Pittsburgh Athletic Co.,* supra 212 Pa.Super. at 334–35, 243 A.2d at 492–93.

In support of this proposition, the case of *Cincinnati Baseball Club v. Eno,* 112 Ohio St. 175, 147 N.E. 86 (1925) was cited.

The appellant urges us to reject this statement as an incorrect statement of the law in Pennsylvania and, generally, throughout the United States. The appellee, on the other hand, argues that this case should not be considered as another baseball case because of its unique facts, that there was ample evidence to sustain the jury's finding that the appellants were negligent and there there was no evidence of a voluntary assumption of risk on the part of the appellee.

■ We are not willing to say that the above statement is in all cases a misstatement of law but we will say it has no application here. In the first place, Judge Montgomery's statement applied only to assumption of risk and we do not reach that subject in this case.[4] Secondly, the Supreme Court of Ohio based its decision in *Eno* on evidence that the batting practice was conducted in an unusual and dangerous location in relation to the stands. No such evidence exists in this case. Lastly, all jurisdictions that have had an occasion to rule on the issue have held that batting practice when conducted in the normal manner is a regular part of the

4. We interpret the disputed portion of *Iervolino* as applying solely to the discussion of assumption of risk. To the extent that it can be interpreted, as the lower court did, as requiring that the question of *negligence* in a batting practice case is always for the jury, regardless of the evidence, we disapprove of it. We hold in today's opinion that customary batting practice is a regular part of a baseball game. As such, the same standards as those applied to a case in which the injury had occurred during the actual game will be applied.

game.[5]  As such, no greater liability attaches to regular batting practice than to the game itself.[6]  We choose to adopt this rule as the more enlightened approach.  This case will therefore be judged by the same standards that would be applied had the injury occurred during the actual ball game.

■  The testimony adduced at trial must be viewed in the light most favorable to the appellee and she must be given the benefit of every fact and every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in her favor.  *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973);  *McElhinny v. Iliff,* 436 Pa. 506, 260 A.2d 739 (1970).  Despite this benefit, we hold that as a matter of law the appellee failed to prove her case.

■  It was incumbent upon the appellee to prove by a fair preponderance of the evidence that the appellants failed to exercise reasonable care in the erection and maintenance of their baseball park commensurate with the risk involved; and in sustaining that burden they must meet the test generally adhered to in this Commonwealth with respect to methods and appliances employed in business by proving that the appellant deviated from ordinary standards.  In the absence of such proof the question of negligence is not for the jury.  *Taylor v. Churchill Valley Country Club,* 425 Pa. 266, 269, 228 A.2d 768, 769 (1967);  *Iervolino v. Pittsburgh Athletic Co.,* 212 Pa.Super. 330, 334, 243 A.2d 490, 491 (1968). The record is devoid of such proof.

5.  *Lang v. Amateur Softball Assoc. of America,* 520 P.2d 659 (Okl. 1974);  *Hunt v. Thomasville Baseball Co.,* 80 Ga.App. 572, 56 S.E.2d 828 (1948);  *Lorino v. New Orleans Baseball & Amusement Co., Inc.,* 16 La.App. 95, 133 So. 408 (1931);  *Brummerhoff v. St. Louis National Baseball Club,* 149 S.W.2d 382 (Mo.App.1941);  *Kozera v. Town of Hamburg,* 40 A.D.2d 934, 337 N.Y.S.2d 761 (1972);  *Baker v. Topping,* 15 A.D.2d 193, 222 N.Y.S.2d 658 (1961);  *Zeitz v. Cooperstown Baseball Centennial, Inc.,* 31 Misc.2d 142, 29 N.Y.S.2d 56 (1941);  *Blackhall v. Albany Baseball & Amusement Co., Inc.,* 157 Misc. 801, 285 N.Y.S. 695 (1936);  *McNiel v. Fort Worth Baseball Club,* 268 S.W.2d 244 (Tex.Civ.App.1954).

6.  For a listing of cases from other jurisdictions dealing with injuries at baseball games *see Iervolino v. Pittsburgh Athletic Co.,* supra, 212 Pa.Super. at 333 n. 1, 243 A.2d at 492 n. 1; *see also* 142 A.L.R. 858.

Appellee contends that the appellants were negligent in failing to "lower a gate which would have effectively excluded the plaintiff from a place of danger." We disagree with that proposition. The lower court aptly noted in its opinion, and we agree, that there is no connection between this open gate and the accident which happened on an occasion when the entire stadium was intended to be used. (Lower Court Opinion at 2). There was no testimony that the batting practice was being conducted in an unreasonable manner, and we refuse to find any negligence based solely on the fact that batting practice was being held earlier than usual in order to accommodate the various inaugural ceremonies that were scheduled for the opening night.

Finally, appellee contends that the appellants were negligent in failing to provide screens in an area from which home plate (the area from which the balls were being hit) could not be seen without leaning over the wall and looking to the left. To buttress this argument the appellee testified that the old home field of the Pirates, Forbes Field, had screens which protected patrons from fly balls until such time as they could see the entire field, including home plate. We are not persuaded that this fact, standing alone, supports a finding of negligence on the part of the appellants. There are many spots in a stadium at which a fan can conceivably be positioned from which he could not see home plate. Each opening which serves as a passage for movement between the inner concourse and stadium seats is an obvious example. When one considers that baseballs are hit at different heights, often follow a curving arc in their flight, and have a tendency to ricochet, every possible opening into the inner concourse becomes a spot of possible collision with a baseball. We have not found any case from any jurisdiction, and none has been cited to us by the appellee, requiring that every possible area of a stadium be screened if from that spot home plate cannot be seen. As we stated with approval in *Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 (1953):

In our opinion they [defendants] exercise the required care *if they provide screen for the most dangerous part of the*

*grand stand* and for those who may be reasonably anticipated to desire protected seats . . . . *Id.* 173 Pa.Super. at 184, 96 A.2d at 184. (Italics added.)

The appellee was standing in an area in which it is common knowledge that baseballs occasionally traverse. This area was located just to the right of the foul line which separates the playing field from foul territory. Such an area, however, cannot be considered as one of the most dangerous parts of the grandstand so as to require screening. Absent comparative evidence of the type and quality required by our opinion in *Schentzel v. Philadelphia National League Club,* supra 173 Pa.Super. at 185–186, 96 A.2d at 184–85, to prove a deviation from customary methods of practice, the jury's verdict in this case must be considered as it was in *Schentzel,* to be speculative and conjectural. *See also Iervolino v. Pittsburgh Athletic Company, Inc.,* supra 212 Pa.Super. at 332–33, 243 A.2d at 492.

We therefore hold that as a matter of law the appellee failed to prove any negligence on the part of the appellants. Having failed to satisfy her burden the lower court erred when it refused appellants' motion for judgment n. o. v.

Judgment reversed and the case remanded with directions to enter judgment n. o. v. in favor of the appellants.

SPAETH, J., filed a concurring and dissenting opinion, in which HOFFMAN, J., joined.

VAN der VOORT, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I agree that judgment n. o. v. should be entered in favor of appellant Pittsburgh Athletic Co., Inc., for no negligence on its part was shown. In my opinion, however, the jury could properly find that appellant Three Rivers Management Corporation was negligent; I therefore dissent from the order entering judgment n. o. v. in favor of it.

Appellee was hit by a baseball that came into the stands in the foul ball zone. She had not taken her seat; rather,

she was walking in a concourse used by ballpark patrons to move about the stadium. Testimony established that this concourse circled the ballpark; that on the side of it facing the field there was a wall about four feet high, with about seven feet of open space above that, extending to the ceiling, which was apparently formed by a higher tier of seats; and that in the concourse were refreshment stands and restrooms. Appellee had been standing with a friend looking at the field, but had decided to get something to eat. She had turned her back to the field and walked a few steps away from the wall when she was struck in her left eye by the foul ball, suffering extensive injuries.

The majority's discussion of whether or not appellee could see home plate from where she had been standing is off the point, because at the time appellee was hit she had turned away and would not have seen a ball coming from home plate in any case. The important fact is that appellee was standing in a place where, as Management Corporation had reason to expect, ballpark patrons would congregate and would rarely pay attention to the ball game itself. Patrons leaving early or arriving late, or patrons using the restrooms during the game, had to walk along the concourse. Moreover, Management Corporation encouraged and expected patrons to eat food and to buy souvenirs from the stands in the concourse. During all these activities, patrons could not, obviously, be aware of where a batted ball was going, or even, perhaps, whether anyone was at bat at all. The jury evidently found, and properly could have found, from this evidence that Management Corporation was negligent in failing to protect these foreseeable victims of stray baseballs by screening off the concourse in that hazardous corner of the field.

Nor was the jury obliged to find against appellee on the ground that she had assumed the risk of the injuries she suffered. The law on assumption of risk may preclude recovery by a patron injured by a baseball while in his seat in the stands—and appellants have cited many cases illustrating this proposition. However, it cannot be said that

because such a patron assumes a risk of injury when he sits in his seat, where he can watch what is going on, he assumes an equal risk when he goes to a concourse that he must use to reach the restrooms, that management encourages and expects him to use to buy food and souvenirs, and where he cannot watch what is going on.[1] When patrons arrive at the ballpark, they are held to the common knowledge (even if they have not attended a game before) that foul balls are a part of the game, and that most of the seats will not be screened, *Schentzel v. Philadelphia National League Club,* 173 Pa.Super. 179, 96 A.2d 181 (1953); but they cannot be expected to know in advance that they will be unprotected during such necessary activities as require use of the concourse. Nor do *Schentzel* or *Iervolino v. Pittsburgh Athletic Co.,* 212 Pa.Super. 330, 243 A.2d 490 (1968), indicate otherwise; these cases concerned only dangers to patrons in the stands.

In denying appellee recovery despite the foregoing considerations the majority has in my judgment made two errors.

First, the majority acknowledges that appellee is entitled to have the evidence regarded in the light most favorable to her, at 88; but it has not, I submit, followed that rule. Thus nowhere in its opinion does the majority recognize the manner in which patrons such as appellee were required, encouraged, and expected to use the concourse, to their foreseeable danger.

Second, the majority sets up and then demolishes a straw man. Thus it says, "We have not found any case from any jurisdiction, and none has been cited to us by the appellee, requiring that every possible area of a stadium be screened if from that spot home plate cannot be seen." At 89. However, no one, certainly not appellee, argues that there is any such requirement. Appellee only argues that the foreseeably dangerous area *where she was* should have been

1. To hold such different risks equal would require rewriting Judge (later Justice) CARDOZO's famous pronouncement, "The timorous may stay at home," *Murphy v. Steeplechase Amusement Co.,* 250 N.Y. 479, 166 N.E. 173 (1929), to read: "Take your stretch in the seventh inning or stay at home."

screened. The majority replies that that area "cannot be considered as one of the most dangerous parts of the grandstand so as to require screening." At 90; but that is no reply at all. The reasonably prudent man—Management Corporation—must take into account much more than only what is "most dangerous." "[T]he 'reasonable man' is a man who is reasonably 'considerate' of the safety of others and does not look primarily to his own advantage." Restatement of Torts, Second § 283, Comment f. The majority acknowledges that as to the particular area where appellee was, "it is common knowledge that baseballs occasionally traverse." At 90. The jury could properly find, and evidently did find, that Management Corporation had invited appellee to use that part of the concourse where she was hurt; that it knew, or should have known, that a baseball might be hit there; and that patrons like appellee would not be on the lookout for it.

I therefore cannot join the majority's characterization of the jury's verdict in favor of appellee and against Management Corporation as "speculative and conjectural," at 90; I regard the verdict as entirely warranted.

The judgment entered on the verdict against appellant Three Rivers Management Corporation should be affirmed.

HOFFMAN, J., joins in this opinion.