Nancy A. ROMEO and James
N. Romeo, her husband,
Appellants,

v.

The PITTSBURGH ASSOCIATES,
d/b/a The Pittsburgh Pirates
Baseball Club.

Superior Court of Pennsylvania.

Submitted Oct. 15, 2001.
Filed Dec. 4, 2001.

Steven B. Larchuk and Brian S. Malkin, Wexford, for appellants.

Stephen J. Del Sole, Pittsburgh, for appellee.

OLSZEWSKI, J.

¶ 1 Nancy and James Romeo appeal from the order sustaining preliminary objections and dismissing their complaint. We affirm.

¶ 2 On July 13, 1998, appellants, who reside in Ohio, traveled to Pittsburgh with their two sons to attend a Pittsburgh Pirates baseball game at Three Rivers Stadi-um. Complaint, 2/09/01, at 3–5. Before doing so, appellants contacted appellee and purchased tickets to the game. *Id.* at 5, 9–10. The back of these tickets contained a disclaimer, which stated that ticket holders assumed the risk of certain dangers during the course of the game, including batted balls. *Id.* at Exhibit A.

¶ 3 When appellants arrived, they presented the tickets, entered the stadium, and sat in the seats designated by their tickets. *Id.* at 5. Their seats were located in a field box, six rows from the field on the third baseline in field box seats, Section 73, Row F, Seats 5 through 8. *Id.* While protective screening was located behind home plate, no screening, netting, or other barrier shielded appellants' seats from the field. *Id.*

¶ 4 During the course of the baseball game, Ms. Romeo turned her head briefly to the left, away from the action on the field. *Id.* When she turned back toward home plate, a batted ball struck her in the face and mouth. *Id.* As a result, she suffered a variety of injuries, including, *inter alia,* the permanent loss of one of her teeth, nerve damage to another tooth, cuts and lacerations to her mouth, headaches, and nausea. *Id.* at 5–6.

¶ 5 On February 9, 2001, appellants filed a Complaint in Civil Action against appellee alleging liability for Ms. Romeo's injuries based on numerous legal theories. Specifically, appellants assert that appellee was negligent, strictly liable, liable for breach of contract, liable for breach of warranty, and liable for violating the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and/or Plain Language Consumer Contract Act ("PLCA"). Appellee filed Preliminary Objections pursuant to Pa.R.C.P. 1028, arguing that none of appellants' allegations stated a claim upon which relief could be granted. On April 9, 2001, the trial court issued an

order sustaining these Preliminary Objections and dismissing appellants' complaint. This appeal followed in which appellants raise the following questions:

1. Does a business which stages entertainment known as "Major League Baseball", have any duty whatsoever under a negligence, assumed duty, strict liability, and/or contract theory of law, regarding its knowing exposure of its business invitees sitting in unprotected areas of the business premises to the risk of serious personal injury from line-drive foul balls?

2. Where during the ticket selling process such a business fails to reasonably advise its customers of such a risk, selectively protects through screening only those patrons paying the highest prices, and then adds a "fine print" disclaimer to the reverse of admission tickets, has that business violated the Pennsylvania Unfair Trade Practices Act and/or the Pennsylvania Plain Language Consumer Contract Act?

Appellant's Brief at 2.

■ ¶ 6 Our standard of review for preliminary objections is well settled.

All material facts as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where doubt exists as to whether a demurrer should be sustained, this doubt must be resolved in favor of overruling it.

*Muhammad v. Strassburger,* 526 Pa. 541, 587 A.2d 1346, 1349 (1991). Appellants pled many different causes of action in their complaint, and we will address the viability of each theory of liability in turn.

*Negligence*

■ ¶ 7 The operator of a place of amusement is "not an insurer of his pa-

trons," and therefore, patrons will only be able to recover for injuries caused by the operator's failure to exercise "reasonable care in the construction, maintenance, and management of the facility." *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546, 549 (1978). The quantum of care owed will depend on the "character of the exhibitions given and the customary conduct of the patrons invited." *Id.*

■ ¶ 8 In light of these principles, Pennsylvania Courts have formulated the "no-duty" rule which provides that operators of a baseball stadium, amusement park, or other such amusement facilities have no duty to protect or to warn spectators from "common, frequent, and expected" risks inherent in the activity. *Hughes v. Seven Springs Farm, Inc.,* 563 Pa. 501, 762 A.2d 339, 343 (2000). Individuals attending these types of activities are deemed to anticipate such obvious risks and therefore to assume them. *Id.* Former Chief Justice Roberts clarified this interrelation between the "no-duty" rule and the assumption of risk analysis relied upon in early cases.

By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself.... Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120, 125 (1983) (citations omitted).

¶ 9 On several occasions, this Court specifically considered the liability of a baseball stadium operator for injuries sustained by a patron hit by a foul ball during a baseball game. In a number of early cases, we held that spectators may not recover because they assume this risk of

injury when they observe a game from the field or in the bleachers. *Schentzel v. Philadelphia National League Club,* 173 Pa.Super. 179, 96 A.2d 181, 186 (1953); *Iervolino v. Pittsburgh Athletic Co.,* 212 Pa.Super. 330, 243 A.2d 490, 491 (1968).

¶ 10 During each and every baseball game, foul balls regularly careen into the grandstand and are oftentimes even caught by spectators. *See Schentzel,* 96 A.2d at 186. This reality is a "matter of such common everyday practical knowledge" that all individuals will be deemed familiar with such 'neighborhood knowledge.' *Id.; Jones,* 394 A.2d at 550. In *Schentzel,* a woman attending her first baseball game was struck by a foul ball and sued the stadium operator for negligence. *Id.* at 183. This Court overturned a jury verdict for the woman on the grounds that even she, as a first-time spectator, assumed the risk of being hit by a foul ball by watching the game from the stands. *Id.* at 186. As a result, the stadium owner was not subject to liability. *Id.*

¶ 11 We reached a similar conclusion in *Iervolino* where a patron at a Pittsburgh Pirates baseball game was hit by a foul ball while sitting seven or eight rows behind the first baseline. *Iervolino,* 243 A.2d at 491. This Court again reversed a jury verdict ruling that despite the spectator's proximity to the field, she assumed the risks of injury from a foul ball. *Id.* at 492.

¶ 12 With a few minor exceptions, the assumption of risk doctrine has since been abolished in Pennsylvania, and as previously discussed, the Pennsylvania Supreme Court recast the assumption of risk analysis of *Schentzel* and *Iervolino* in terms of the "no-duty" rule. *Jones,* 394 A.2d at 551–52. In *Jones,* a spectator filed a negligence action against a stadium operator after she was hit by a foul ball while using an interior walkway at the stadium. *Id.* at 548. Our Supreme Court held that the operator could be liable as a matter of law, because this type of risk was not a "common, frequent, and expected" part of the game. *Id.* at 551–52. In holding that the "no-duty" rule did not apply to this situation, the Court reasoned that the openings in the interior concourse through which the ball passed were "not an inherent feature of the spectator sport of baseball." *Id.*

■ ¶ 13 Appellants argue that this shift in *Jones* from an assumption of risk analysis to a "no-duty" analysis renders *Schentzel* and *Iervolino* devoid of precedential value. Appellants severely misinterpret *Jones.* The "no-duty" rule set forth in *Jones* clearly incorporates the concept of assumption of risk utilized in earlier cases. The passage from Justice Robert's opinion in *Carrender,* discussed above, reinforces this interpretation. *See Carrender,* 469 A.2d at 125.

¶ 14 In turning now to the facts of the present case, we conclude that the "no-duty" rule applies, because the risk of being struck by a foul ball while sitting in the bleachers is exactly the type of "common, frequent, and expected" risk inherent in a baseball game. As both *Schentzel* and *Iervolino* held, one need not be an avid baseball fan to appreciate the risk that a batted ball can and will enter the grandstand during the course of a game. As a result, under *Jones,* appellee had no duty to protect appellants from or to warn them about the risk of injury from a foul ball.

¶ 15 This case is clearly distinguishable from *Jones* where the Supreme Court found the "no-duty" rule inapplicable, because the risk of being hit by a ball in the interior concourse was not a common one, inherent to the game. Here, on the other hand, appellants faced the same basic risk as the spectators in *Schentzel* and *Iervolino:* being hit by a foul ball while sitting in the stands. The Court in *Jones* expressly

**1032** ■ ▇▇▇▇▇▇▇

stated that "[r]ecovery is not granted to those who voluntarily expose themselves to the kind of risks involved in Iervolino [ ] and Schentzel [ ], by participating in or viewing the activity." Therefore, appellee is not liable.

¶ 16 Appellants further contend that even if the "no-duty" rule applies, appellee somehow lost the benefit of that rule by installing protective screening in some areas of the ballpark and not others. Their reliance on Restatement (Second) of Torts § 323 and *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983), to support this position is misplaced. Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of another's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if ... (b) the harm is suffered because of the other's reliance upon the undertaking.

When appellee placed a protective screen behind home plate, it did not assume a duty to provide netting to protect all spectators from foul balls. Such a conclusion would lead to the absurd result of screens encircling the entire field. Since appellants' seats were located on the third baseline, they did not reasonably rely on the lone screen behind home plate for protection. Therefore, section 323 does not apply.

*Remaining Theories of Liability*

¶ 17 Appellants attempt to fit their case into four alternative theories of liability: strict liability, breach of contract, breach of warranty, and violation of UTPCPL and PLCA. Despite an artfully pled complaint, we conclude that appellants are not entitled to relief.

▇▇▇ ¶ 18 In order to state a *prima facie* claim for strict products liability, appellants must establish the elements set forth in Restatement (Second) of Torts § 402A. *Phillips v. Cricket Lighters*, 773 A.2d 802, 810 (Pa.Super.2001). Section 402A requires a plaintiff to show: 1) a product; 2) that is in a defective condition or is unreasonably dangerous; 3) that is sold to a consumer; and 4) which causes physical harm to the ultimate user. Appellants fail to satisfy the first and most important element, as the sale of a ticket to a baseball game is the sale of a service, not a product. *See Greenwood v. Busch Entm't Corp.*, 101 F.Supp.2d 292, 296 (E.D.Pa.2000). Therefore, appellants fail to state a claim of strict products liability.

▇▇ ¶ 19 Appellants also attempt to define a baseball game as an ultrahazardous or "abnormally dangerous" activity subject to strict liability. This claim is similarly without merit. It is well established that "abnormally dangerous" activities include those few hazardous activities that not only create a serious risk of physical harm, but which are unusual due to their nature or surrounding circumstances. Restatement (Second) of Torts §§ 519 and 520, comment f; *Painter v. Pennsylvania Electric Co.*, 368 Pa.Super. 334, 534 A.2d 110, 112 (1987). Sitting in the bleachers at a baseball game does not approach the type of "abnormally dangerous" activity which merits strict liability.

▇▇▇ ¶ 20 Appellants further assert claims for breach of contract, breach of warranty, and violations of UTPCPL and PLCA arising out of the alleged contract they entered into with appellee upon purchasing their tickets. Even if we were to assume that a contract existed between these parties, that contract would be subject to the limitations contained in the disclaimer printed on the back of the ticket. This warning expressly stated that

 

appellants assumed the risk of injury from batted balls.

 ¶ 21 Appellant's contention that appellee breached an implied covenant of good faith contained in the alleged contract fails to state a claim upon which relief can be granted. While Pennsylvania Courts recognize that all contracts contain an implied covenant of good faith, it has no applicability to the present case. It would strain logic to rule that a stadium operator acted in bad faith by admitting an individual to watch a baseball game where there was an obvious risk she would be struck by a foul ball.

¶ 22 Appellant has further failed to state a claim that appellee breached an implied warranty of safety. We stated above that the operator of a baseball stadium or other amusement activity is not an insurer of his patrons, and to impose an implied warranty of safety runs counter to this principle. *See Jones,* 394 A.2d at 549. Even if we recognized this warranty, the ticket clearly disclaimed any liability for injuries sustained from foul balls.

¶ 23 Appellants' final theory, that appellee violated the UTPCPL and PLCA, similarly fails to state a claim upon which relief may be granted. Specifically, appellants claim that appellee did not adequately warn them of this danger and that the waiver of liability for injury caused by foul balls failed the readability test.

¶ 24 In order to state a claim under the UTPCPL, a plaintiff must allege one of the "unfair or deceptive practices" set forth in 73 P.S. § 201–2(4)(i)–(xxi). 73 P.S. § 201–3. In considering these causes of action it is important to remember that "[t]he general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." *Lennon v. Wyeth–Ayerst Laboratories, Inc.,* 2001 WL 755944, at *2 (Pa.Super. filed June 14,

2001) (citing *Burke v. Yingling,* 446 Pa.Super. 16, 666 A.2d 288, 291 (1995)).

As we have repeatedly stated, appellee had "no-duty" to warn appellants about the risk of foul balls, and therefore nothing appellee did or did not do can be characterized as a "deceptive business practice." This situation is not one against which the law was designed to protect. Even if the UTPCPL required appellee to warn spectators, we would rule that the warning printed on the reverse side of the admission ticket was sufficient. The ticket is not a complex document that appellants needed to closely examine in order to locate the warning or understand its terms. The language of the warning clearly addressed the risk spectators faced from batted balls, and other than an advertisement, it was the only thing printed on the back of the ticket. Therefore, appellants' final theory also fails to state a claim upon which relief can be granted.

¶ 25 Order affirmed.