J-A27033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LORI ANN SIMMONS AND JOHN SIMMONS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1437 EDA 2018 |
| CROTHALL HEALTHCARE, INC | : | |

Appeal from the Judgment Entered June 12, 2018
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2016-C-0183

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 09, 2019**

Lori Ann and John Simmons appeal from the judgment entered against them in their negligence action against appellee Crothall Healthcare, Inc. ("Crothall").[1] The Simmons argue that the trial court erred in granting Crothall's motion for compulsory nonsuit. We affirm.

The Simmons filed a complaint alleging that Ms. Simmons slipped and fell on ice in a parking lot of the Lehigh Valley Hospital and fractured her ankle. They averred that Crothall was the entity responsible for removing snow and

_____

[1] The Simmons prematurely appealed from the April 16, 2018 order of the trial court denying the Simmons' motion for post-trial relief. We issued a *per curiam* order directing the Simmons to praecipe the prothonotary of the trial court to enter judgment on the docket. The trial court entered judgment for Crothall on June 12, 2018. We thus treat the appeal as from the entry of judgment, and have amended the caption accordingly. **See** Pa.R.A.P. 905(a)(5); **Harvey v. Rouse Chamberlin, Ltd.**, 901 A.2d 523, 524 n.1 (Pa.Super. 2006).

ice from the hospital's parking lots, and that its negligence in relation to the removal of snow and ice was the cause of Ms. Simmons' injury. The Simmons also set forth a claim for Mr. Simmons' loss of consortium.

Prior to trial, Crothall filed a motion in limine to preclude the testimony of the Simmons' expert meteorologist, Thomas Else, because he was "not qualified to opine . . . regarding the industry standards and customs in the field of snow/ice removal and management." Mot., 10/23/17, at ¶ 19. The court deferred ruling on the motion until the time of trial. Its order doing so stated, "if Else is not able to demonstrate he has a level of knowledge of the industry standard of care for professional snow removal and mitigation of injury beyond that possessed by the average person, he may be precluded from offering any expert opinion testimony." Order, 11/3/17, at 2 n.1. The order also warned that "[w]ithout any expert opinion testimony on the relevant standard of care for the snow removal, [the Simmons] may not be able to establish [the] duty of care owed to [the Simmons] by [Crothall]." *Id.*

At trial, Ms. Simmons testified that she was cardiac stenographer who worked at the hospital's Muhlenberg location. She worked an eight-hour shift on February 17, 2017, and left the premises at 3:00 p.m. At around 2:00 a.m. that night, the morning of February 18, she returned to the hospital. She did not notice any snow or ice in the parking lot at that time, except for a pile of snow between her car and the car parked in front of hers.

She left work again at 3:00 a.m. Snow had started to fall ten minutes earlier, and there was a "dusting" of snow on the ground. N.T. (Lori Ann

Simmons), 11/28/17, at 12, 45-46. She observed a co-worker slip on the "concrete walkway" to the parking lot, roughly ten feet from the hospital entrance. *Id.* at 73-74. Once in the parking lot and approaching her car, Ms. Simmons also slipped and fell, injuring her ankle. Ms. Simmons testified she "slid and hit a car, a parked car in front of [her], and fell." *Id.* at 13. She was two or three feet away from her own car at the time she fell. Ms. Simmons testified she slipped on black ice[2] that was covered by the snow. She did not notice any ice in the parking lot until after she fell and looked underneath her feet. She did not see any salt on the ice. The Simmons also showed the jury a surveillance video of the parking lot, depicting Ms. Simmons slip and fall.

The Simmons also presented the testimony of Michael Simmers, an employee of Crothall. His position for Crothall entails "running the Housekeeping Department and Grounds Departments." N.T. (Michael Simmers), 11/28/17, at 3. Simmers acknowledged that Crothall is the sole entity responsible for the removal of snow and ice from the hospital's parking lot and is in total control of that obligation, pursuant to a contract between

_____

[2] Black ice is thin, transparent ice occurring on asphalt. ***See Morin v. Traveler's Rest Motel, Inc.***, 704 A.2d 1085, 1087 n.1 (Pa.Super. 1997); ***Tucker v. Bensalem Twp. Sch. Dist.***, 987 A.2d 198, 201 (Pa.Cmwlth. 2009).

the hospital and Crothall.[3] No written contract was introduced at trial, and there was no testimony regarding specific contract terms.

Simmers testified that the hospital operates 24 hours a day. When there is inclement weather, Simmers inspects the parking lot around 5:00 a.m., and then again periodically throughout the day. He stated he would have made his final inspection before the accident at approximately 4:00 p.m. on February 17, before leaving for the day.

Simmers stated that in the event of a snowfall, the hospital security team would typically contact Crothall, and Crothall would contact Rogerio

---

[3] Simmers testified as follows:

> [The Simmons' attorney:] So, generally, Crothall is responsible for ice removal at the Muhlenberg Lehigh Valley Hospital; correct?
>
> [Simmers:] Yes.
>
> [The Simmons' attorney:] Okay. And that would include all the parking lots as well; correct?
>
> [Simmers:] Yes.
>
> [The Simmons' attorney:] And that's pursuant to a contract []between Lehigh Valley Hospital and Crothall Healthcare, Inc.; correct?
>
> [Simmers:] Yes.
>
> [The Simmons' attorney:] So, Lehigh Valley Hospital does not perform any of its own ice removal; correct?
>
> [Simmers:] We do [it] for them, yes.

N.T. (Simmers) at 6-7.

Trucking ("Rogerio"), with whom Crothall sub-contracted the plowing of the parking lot. According to Crothall's agreement with Rogerio, Rogerio had 90 minutes to respond to a call for snow removal.[4] Simmers confirmed that Rogerio has a contract with Crothall, not with the hospital, and that Rogerio "has no independent responsibility to show up and perform ice removal at the hospital." *Id.* at 8-9.

Simmers testified that Rogerio does not remove snow between or close to parked cars, for fear of causing damage, and stated that Rogerio removes snow up to six inches from parked cars. Simmers testified that he understands that when snow "is left piled in a parking lot . . . and the temperature rises, [it] would melt into water and then at night when the temperature drops would freeze into ice." *Id.* at 15. He also confirmed he understands that water from melted snow would "leach into other areas of the parking lot" and freeze, and stated, "That's why we salt." *Id.* He testified that if he saw that snow had melted and refrozen into ice, he would call Rogerio "to remediate." *Id.* at 15, 17. The Simmons did not question Simmers regarding Rogerio's salting procedures. However, Simmers testified that after a storm, Crothall would

_____

[4] Regarding the agreement between Crothall and Rogerio, Simmers testified:

> When it snows – there's a couple different ways we're notified, one of them being if a snowstorm begins that wasn't expected, the hospital security calls, we call them. They have, like, 90 minutes to be – to make it to campus, and then they do snow removal for us when the storm's over. Then, we inspect and decide where we're going to go from there.

N.T. (Simmers) at 8.

"have [Rogerio] trucks on site most nights treating and removing snow. I think -- through the records, I was able to look at -- we did have trucks [the] evening [of the 17th]. In fact, I think we had them on site every day from the 12th on." *Id.* at 17.

The Simmons introduced the testimony of Else, whom they offered as "an expert in the field of meteorology and snow and ice removal." N.T. (Thomas Else), 11/29/17, at 6. Crothall objected to Else's qualifications as an expert in snow and ice removal. The Simmons clarified that they would present Else as an expert in "snow and ice" "[a]s part of meteorology," and Crothall agreed to that limitation.

Else then testified about weather conditions around the time of Ms. Simmons' fall. He said that snowstorms had left untreated ground in the area of the hospital covered with 22 inches of snow. While temperatures remained below freezing on the day in question, the day was sunny, and the hospital's parking lot was completely exposed to the sun. Else stated that sunlight "would have resulted in runoff [snowmelt] water generated in the parking lot," and, after sunset around 5:30 p.m., "[a]ny residual [snowmelt] water and leftover slush, which was not properly treated with a deicer, quickly refroze into solid ice." *Id.* at 16. Else also testified that the National Weather Service had issued a winter weather advisory on the day in question, as snow was expected to begin again at 3:00 a.m. on the morning of February 18, *i.e.*, the time of Ms. Simmons' fall. Else confirmed that dry, powdery snow did begin to fall around that time, which immediately accumulated on the ground. He

characterized it as a "dusting" less than 0.10 inches deep, and opined that the new snowfall would have covered any residual ice, and that Ms. Simmons would have slipped on the ice, and not the powdery snow.

The Simmons also asked Else to testify about the information he would provide to snow removal companies regarding weather conditions. Crothall objected. The court overruled the objection, but clarified that Else was not to testify regarding snow removal procedures. The Simmons asked Else whether ice would have been present throughout the parking lot, and the court sustained Crothall's objection to that question.

At the close of the Simmons' evidence, Crothall moved for a compulsory nonsuit. As relevant here, Crothall argued that there was no evidence that its snow removal procedures fell below the appropriate standard of care. Crothall explained that there was no evidence of the standard of care, as the Simmons did not introduce either the terms of the contract between the hospital and Crothall or expert testimony regarding professional standards within the snow removal industry. Thus, there was no basis on which the jury could conclude that Crothall's snow removal procedures were inadequate.

The court granted the compulsory nonsuit. The court found "that the evidence lacks any demonstration or testimony regarding the duty that was owed to [Ms.] Simmons by [Crothall] to take measures to avoid the slippery condition from existing at this time," and that there was no evidence of "a professional standard within the business of snow removal . . . to apply agents

which would prevent the accumulation of ice either before or after the snowfall began based upon the weather conditions[.]" N.T. (Motion), 11/29/17, at 20.

The Simmons filed a motion for post-trial relief, arguing that the court erred in finding that they had not presented evidence that Crothall had a duty to remove the snow and ice at issue. The court denied relief. The court authored a contemporaneous opinion in which it reviewed both Sections 323 and 324A[5] of Restatement (Second) of Torts, and concluded that the Simmons failed to present sufficient evidence to establish a legal duty. The court also concluded that there was no testimony "that the duty entailed an obligation to undertake any specific remedial acts," such as treating refrozen ice "within a designated timeframe after a nighttime refreeze," removing the ice and snow from closer proximity to the parked vehicles, or inspecting the lot after sunset. Am. Mem. Op., 4/16/18, at 12-13. The court pointed out that the contract was not introduced as evidence of specific snow removal or inspection requirements.

The Simmons appealed, and raise the following issues:

1. Did the [Simmons] establish [*prima facie*] evidence that [Crothall] owed a duty to the [Simmons]?

2. Did [Crothall] have notice of the [d]angerous [c]ondition?

3. W[ere the Simmons] required to present expert witness testimony in order to establish [Crothall's] standard of care?

---

[5] As discussed further below, Section 324 imposes "liability to third person[s] for negligent performance of undertaking," and is the corollary to Section 323 applicable when the harm is suffered by a third person. Restatement (Second) of Torts § 324A (1965), comment a.

- 8 -

4. Was [Crothall's] Motion for Compulsory Nonsuit properly granted?

The Simmons' Br. at 4 (answers below omitted).

We review the grant of a motion for nonsuit for an abuse of discretion or an error of law. **Harvey**, 901 A.2d at 526. "A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, could not reasonably conclude that the elements of the cause of action had been established." **Id.** (quoting **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa.Super. 2000)).

In their first issue, the Simmons argue that they set forth *prima facie* evidence of Crothall's duty to the Simmons to remove snow and ice in the parking lot. The Simmons point to Simmers' testimony admitting that Crothall was responsible for any and all removal of ice on the property, pursuant to a contract; that the hospital was open 24 hours a day; and that it was Simmers' responsibility perform inspections to look for ice. The Simmons' Br. at 13-15, 17-18.

"To demonstrate negligence, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." **Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund**, 73 A.3d 543, 563 n.17 (Pa. 2013). "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." **Bilt-Rite Contractors, Inc. v. The Architectural Studio**, 866

A.2d 270, 280 (Pa. 2005) (quoting **Althaus ex rel. Althaus v. Cohen**, 756 A.2d 1166, 1168 (Pa. 2000)). Duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." **Atcovitz v. Gulph Mills Tennis Club, Inc.**, 812 A.2d 1218, 1222 (Pa. 2002). Whether a duty exists in any given set of circumstances is a question of law. **Walters v. UPMC Presbyterian Shadyside**, 187 A.3d 214, 222 (Pa. 2018).

A landowner owes a duty to exercise reasonable care to keep its land safe for business invitees,[6] provided certain circumstances are met, such as that the unreasonable risk of danger is foreseeable by the landowner, and the risk is not the sort obvious to an invitee. Restatement (Second) of Torts § 343; **Farabaugh v. Pa. Tpk. Comm'n**, 911 A.2d 1264, 1272 (Pa. 2006).

Section 324A of Restatement (Second) of Torts states that liability can arise from the negligent performance of an undertaking:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or

---

[6] An employee is a "business invitee." **Gutteridge v. A.P. Green Servs., Inc.**, 804 A.2d 643, 655-56 (Pa.Super. 2002).

- 10 -

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A. The Pennsylvania Supreme Court has held that Section 324A sets forth a correct statement of Pennsylvania law. *See Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 619 (Pa.Super. 2017), *appeal denied*, 188 A.3d 387 (Pa. 2018), *and* 188 A.3d 388 (Pa. 2018).

Thus, pursuant to Section 324A, an entity that assumes a landowner's responsibility to remove snow and ice from its roads and walkways has a duty toward invitees to exercise reasonable care in that undertaking. *See Hoffmaster v. Cty. of Allegheny*, 550 A.2d 1023, 1026 (Pa.Cmwlth. 1988) (holding township that had assumed county's responsibility to remove snow and ice from county roads pursuant to a contract could be held liable for negligence under Section 324A);[7] *cf. Barnes v. Alcoa, Inc.*, 145 A.3d 730, 737 (Pa.Super. 2016) (finding no evidence that defendant was liable for snow removal under Section 324A when testimony established that defendant's subsidiary company, not defendant, had undertaken removal of snow and ice from parking lot).

Here, the Simmons presented uncontradicted evidence that Crothall undertook the hospital's duty to its invitees to remove snow and ice in the parking lot. Therefore, under Section 324A, Crothall owed a duty to exercise reasonable care in performing snow and ice removal. To the extent that the

---

[7] Although decisions of the Commonwealth Court are not binding on this court, we may consider them as persuasive authority. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa.Super. 2009).

trial court held otherwise, it erred. However, it did not err in holding that the Simmons failed to introduce sufficient evidence that Crothall had **breached** that duty.

The Simmons maintain that they introduced sufficient evidence to establish a breach because they presented evidence that Crothall had notice of the dangerous, slippery condition but negligently failed to remedy it. They argue that Crothall left snow between parked cars in the lot for three days, this snow melted and reformed into ice, and that they demonstrated Crothall had constructive notice that the slippery conditions would have persisted since sunset, approximately ten hours before Ms. Simmons fell. The Simmons further argue that the court erred in requiring them to introduce expert testimony regarding a professional standard of conduct, or evidence that "refrozen ice [should] be treated within a designated timeframe" to establish what a reasonable snow removal company would do when on notice of a dangerous condition. The Simmons' Br. at 18-19, 34.

To prevail on a negligence claim, "[t]he plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm." **Walters**, 187 A.3d at 221 (quoting **Martin v. Evans**, 711 A.2d 458, 462 (Pa. 1998)). Although whether a defendant has breached its duty is a factual question for the jury, a plaintiff must set forth evidence of general standard of expected care and evidence of the defendant's nonconforming conduct. **See**

*Schentzel v. Philadelphia Nat. League Club*, 96 A.2d 181, 185 (Pa.Super. 1953); *accord Iervolino v. Pittsburgh Athletic Co.*, 243 A.2d 490, 491-92 (Pa.Super. 1968). Industry standards of care are not controlling, but are "to be considered as factors of measurement of due care." *Schentzel*, 96 A.2d at 185. Lay testimony alone can be sufficient to raise a question of fact that a defendant was negligent for failing to apply salt or other deicing agents to parking lots. *See, e.g, Ferencz v. Milie*, 535 A.2d 59, 64 (Pa. 1987); *Harvey*, 901 A.2d at 527-28; *Tucker*, 987 A.2d at 201. However, a jury may not be permitted to speculate that the defendant was negligent absent some reference to reasonable actions the defendant failed to take. *Schentzel*, 96 A.2d at 185.

Here, the Simmons did not introduce any evidence that Crothall's actions fell short of a reasonable standard of care. The only testimony establishing a standard of care came from Simmers, who testified regarding Crothall's general procedure of contacting Rogerio in the event of a snowfall or when snow melted and refroze in the parking lot. He testified that Rogerio undertook steps to remediate snow and ice on the evening of the 17th and the prior six evenings. The Simmons did not introduce the terms of the contract between the hospital and Crothall as evidence that Crothall failed to adhere to the standard of care set therein. Nor did the Simmons introduce testimony establishing industry standards of snow removal to establish that Crothall fell short of those standards. While the contract terms and industry standards would not have been determinative, the Simmons also did not

introduce any testimony addressing alternative snow and ice removal techniques to evince that Crothall unreasonably failed to employ those techniques, or any evidence of alternative course of action that Crothall should have taken. Without this evidence, the jury would have been unable to conclude that Crothall failed to exercise reasonable care in fulfilling its duty. *Schentzel*, 96 A.2d at 185. To the extent the Simmons rely on Ms. Simmons' cursory testimony that the lot appeared unsalted at the time of her fall, that testimony falls woefully short of setting forth a standard of care and establishing that Crothall breached that standard. *See Beck v. Holly Tree Homeowners Ass'n*, 689 F.Supp.2d 756, 765-66 (E.D. Pa. 2010) (concluding plaintiff provided insufficient evidence to create factual dispute whether defendant could have done something to prevent black ice, such as "apply the right type or proper amount of deicing material").[8]

The trial court did not err in concluding that the Simmons failed to submit sufficient evidence that Crothall breached the standard of care, and therefore properly granted a compulsory nonsuit. Because we hold nonsuit was proper for this reason, we do not address the Simmons' other arguments.

Judgment affirmed.

---

[8] As with decisions of the Commonwealth Court, we are not bound by decisions of the lower federal courts, but may find them persuasive. *Martin v. Hale Prod., Inc.*, 699 A.2d 1283, 1287 (Pa.Super. 1997).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/19