519 A.2d 488

**Florence B. KOBYLINSKI, Executrix of the Estate of Joseph A. Kobylinski, Sr., Deceased**

**v.**

**Dr. John G. HIPPS and Dr. William Schmidt**

**v.**

**Dr. William SCHMIDT**

**v.**

**Dr. John G. HIPPS.**

**Appeal of Dr. William SCHMIDT.**

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Dec. 22, 1986.

Paul H. Millin, District Attorney, Tionesta, for appellant.

T. Warren Jones, Erie, for Hipps, appellee.

Before BROSKY, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

On the evening of November 26, 1979, Plaintiff's Decedent had been visiting a residence, owned by Appellant-Schmidt, who had leased it to Appellee-Hipps. Decedent, along with his family, was on the premises because Decedent's son had lacerated a finger and wanted Appellee, a physician, to examine the injury. Appellee was Decedent's

son's father-in-law. Decedent accompanied Appellee and Decedent's son to Appellee's residence, Decedent stepped out of the automobile which had stopped adjacent to an unguarded exterior stairwell attached to the home, and plunged to his death. The record shows that the stairwell was equipped with an outside light positioned over a basement door; however, it was not illuminated that evening. In addition it was further pointed out during trial that Decedent was not familiar with the stairwell's unprotected condition.

Following the accident, Plaintiff, executrix of Decedent's estate, lodged a wrongful death and survival action against Appellant and Appellee who later joined each other as additional defendants. A jury trial was conducted after which negligence was apportioned as follows: Decedent—5%, Appellee—20%, Appellant—75%. Decedent's estate was awarded a net amount of $30,000.

Subsequently, Appellant filed a Motion for Judgment Non Obstante Veredicto or in the Alternative for a New Trial. On October 21, 1985, Appellant's post-trial motion was denied and Judgment was entered on the verdicts. This appeal follows.

Appellant cites three instances of error allegedly committed by the trial court. First, it is claimed that the trial judge improperly instructed the jury on the law concerning the liability of a landlord out of possession. Second, Appellant posits the trial court erred in its instruction to the jury concerning an exculpatory clause found in the lease. Third, it is advanced that the trial court committed error by failing to instruct the jury on the question of primary/secondary, active/passive negligence and the law concerning intervening efficient or superseding cause.

■ By his brief, Appellant correctly points out that neither a Motion for Directed Verdict nor Binding Instructions were filed by Appellant at the close of evidence. We note that under prior statutory authority in effect at the time of trial, a written and filed request for binding instructions was a condition precedent to the filing of a motion for

judgment n.o.v. *See* 12 P.S. § 681. (Repealed effective June 27, 1980). *See also* 42 P.S. § 20003(b) (provisions of statute remained effective as part of common law under failsafe provisions of JARA).[1]

While it is true that Appellant did not comply with these directives, we find, from an independent review of materials supplied to this court, a bundle of documents designated by the trial court Prothonotary as "papers ... sent directly to the Judge and not filed in the Prothonotary's office." Contained within this collection is a Motion for Directed Verdict, signed by Appellant's counsel. A directed verdict was requested on the ground that, with some exceptions, a lessor is not liable for injuries sustained by third parties while on the owner's property when the owner was out of possession. The requested Points for Charge presented to the trial court before jury deliberation outlined in greater detail this area of tort law. However, this Point for Charge was refused and Appellant's counsel took an exception to this denial. (N.T. 201, 214).

We recognize that the rules of civil procedure should be followed in order to ensure the smooth and efficient operation of the judicial process. However, we are guided by Pa.R.C.P. 126, which sanctions liberal construction of the rules in an effort to promote the accordance of fairness among the parties. *Dream Pools of Pennsylvania, Inc. v. Baehr,* 326 Pa.Super. 583, 589, 474 A.2d 1131, 1134 (1984). *See* Pa.R.C.P. 126. "The Rules of Civil Procedure are designed to achieve the ends of justice and are not to be accorded the status of substantive objective requiring rigid adherence." *Lewis v. Erie Insurance Exchange,* 281 Pa. Super. 193, 199, 421 A.2d 1214, 1217 (1980).

We will address the merits of Appellants' motion for judgment n.o.v. although a motion for directed verdict was

1. Pa.R.C.P. 226(b) provides a major change in practice. Requests for binding instructions have been eliminated and replaced by motions for directed verdict which may be oral or written. No express requirement of filing a motion for directed verdict as a prerequisite to filing a motion for judgment n.o.v. is contained within new Rule 226(b). *See* Pa.R.C.P. 226(b).

not filed with the Prothonotary but with the court during trial. We base this decision on the fact that the trial judge was given the opportunity to consider Appellant's request for directed verdict during the course of the trial.[2] Moreover, the legal predicates on which Appellant rest his motion for judgment n.o.v. were presented to the trial judge as Points for Charge, and when denied, Appellant's counsel took exception. We are convinced that Appellant has substantially complied with the Rules of Civil Procedure in effect at the time of trial. Any deviation that was committed by failing to file the motion with the Prothonotary was de minimus under the circumstances and did not jeopardize the substantive rights of the parties involved.[3]

In reviewing a motion for judgment n.o.v., the facts must be considered in the light most favorable to the party against whom the motion was made. *Maravich v. Aetna Life and Casualty Co.*, 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986). If, however, the law does not permit recovery upon the alleged facts on which the jury may justifiably have found, a judgment n.o.v. should be granted. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 589, 375 A.2d 1267, 1273 (1977).

■ Appellant initially urges that the trial court erroneously instructed the jury on the status of Pennsylvania law concerning the liability of a landlord out of possession. Appellant cites two excerpts of the trial court's jury instructions in support of this contention. We shall address the accuracy of these excerpts *in seriatim*. The first excerpt is as follows:

A landlord may be liable for bodily harm sustained by a third party as a result of a defect or dangerous condition existing at the time of execution of the lease. So what

**2.** We note that had the changes found in Rule 226(b) been in effect at the time of trial, supplying the trial court with the directed verdict motion, without actually filing it, would have sufficed.

**3.** We emphasize that this decision in no way condones the practice of deviating from the mandates reflected in the Rules of Civil Procedure. Rather, the outcome of this issue is confined to the facts of the case.

this point is saying is that the stairwell was there when Dr. Hipps leased it and in May of 1979, May 31st I believe (N.T. 201).

We agree that a landlord *may* be held liable to third parties for injuries sustained on his/her property; however, this statement falls short from being an adequate explanation of the status of the law in this area of torts. The general rule in Pennsylvania states that a landlord out of possession, in most instances, is *not* responsible for injuries suffered by third parties on the leased premises. *Pierce v. Philadelphia Housing Authority*, 337 Pa.Super. 254, 257, 486 A.2d 1004, 1005 (1985). In *Parquet v. Blahunka*, 368 Pa. 626, 84 A.2d 187 (1951), our Supreme Court was confronted with a factual situation similar to that of the case at bar. Lessee rented a house from Landlord which had a defective porch railing. During the course of a social visit, the railing collapsed resulting in injuries to Lessee's guest. The Supreme Court opined in *Parquet* that a landlord out of possession was not liable for bodily harm caused to his/her lessee, or others on the property with the consent of the lessee, by any dangerous condition, whether natural or artificial, which existed at the time lessee took possession and which the lessee knew, or should have known, to exist. *Id.*, at 368 Pa. 627, 84 A.2d 188.

However, this rule is not without exception. Our research of case law in Pennsylvania shows several instances in which liability attached to a landlord out of possession:

1. the lessor contracts to make repairs but either refuses to make them or performs them in a negligent manner. *Klais et ux. v. Guiton*, 344 Pa. 600, 601, 26 A.2d 293 (1942);

2. the lessor conceals, or fails to disclose to the lessee, any condition which involves unreasonable risk of physical harm to persons on the property. *Doyle v. Atlantic Refining Co.*, 357 Pa. 92, 98–99, 53 A.2d 68, 71 (1947);

3. the landlord knew, or should have known, the leased premises were to be used for purposes involving admis-

sion to the public. *Yarkosky v. The Caldwell Store, Inc.,* 189 Pa.Super. 475, 481, 151 A.2d 839, 842 (1959); and,

4. the landlord has retained control over a portion of the property which is necessary to the safe use of the leased property; or, if the lessor shares with the lessee the right to possess any section of the property. *Smith v. M.P.W. Realty Co.,* 423 Pa. 536, 539, 225 A.2d 227, 229 (1967). *Pagano v. Redevelopment Authority, Etc.,* 249 Pa.Super. 303, 319–321, 376 A.2d 999, 1007–08 (1977).

See *generally* Restatement (Second) of Torts §§ 356–362 (1965).

It is clear from the record that none of these exceptions are applicable to the case at bar. There is no dispute to the fact that the rental agreement entered into by both parties consisted of a lease wherein Appellee would gain sole possession of the premises for use as a private dwelling. (N.T. 159, 165). Likewise, the record does not indicate that the house was to be used for purposes involving admission to the general public. In addition, there was no testimony to the effect that Appellant, as landlord, convenanted to make any major repairs to the building throughout the leasehold period. (N.T. 166–67). Finally, it is patently clear that the unguarded condition of the outside stairwell was conspicuous at the time the lease was executed and that Appellee never questioned Appellant about its safety. (N.T. 58, 158).

By its Opinion, the trial court mistakenly relied upon *Toth v. Philadelphia,* 213 Pa.Super. 282, 247 A.2d 629 (1968), as being dispositive of Pennsylvania law concerning the potential liability of a landlord out of possession to third parties injured on the leased premises:

"A long established exception ... has been that if the defect existed at the time the lease was executed, the landlord remains responsible to the injured third party."

*Toth* at 213 Pa.Superior Ct. 287, 247 A.2d 631. (Trial Court Opinion 4, 5). We find that this statement is correct

as applied to the facts in *Toth*. However, it cannot be taken out of context and applied to a completely different set of circumstances, as evidenced by the facts in the case at bar. In *Toth*, Plaintiff was a pedestrian who was injured on a defective sidewalk infront of the leased premises owned by Defendant-Landlord. The landlord was held liable for failing to maintain the sidewalk in a safe condition, inasmuch as Plaintiff was a member of the *general public*, who Defendant fully expected to use the sidewalk. Read in this light, *Toth* is clearly an example of this court's application of the third exception set out above. This is even more apparent given the fact that the court almost exclusively relied on past slip-and-fall cases on sidewalks in arriving at its conclusion. Although the language of the Opinion seemingly establishes a broad rule of law, it must be narrowly applied to the facts of the case.

By comparison, Decedent, in the case *sub judice*, was not a member of the general public whom Appellant expected to enter the leased property. Rather, Decedent was a *social guest* who was owed a completely different standard of care. The trial judge's confusion of Decedent's classification is evident from the second excerpt of the jury charge cited by Appellant as a misstatement of the law:

> [n]ow, in that regard and in further charge concerning the issue of the duty of a *possessor of land*. What is the duty that the Defendants had to the decedent. The decedent as an *invitee* upon these premises as contrasted to a trespasser or he was there was a guest and the law says this: a possessor of land is subject to liability for a physical harm caused to invitees by a condition on the land, if but only if first, the possessor knows or has reason to know of the condition and should recognize that it involved an unreasonable risk of harm to such invitees and should expect that they will not discover or recognize the danger. Two, and he fails to exercise reasonable care to make the condition safe or to warrant the invitee of the condition and the risk involved. Finally, the invitee does not know or have reasons to know of the condition and the risk involved.

Now, that's the duty that Hipps and Schmidt had to Kobylinski under the issue of negligence. The question is, did they recognize that it was a dangerous condition and did they ignore that to protect the invitee and did the invitee have any reason to know the condition existed, and if he did, if you find from any of the facts that he recognized or should have ... (R.Pp. 225a and 226a) (emphasis added).

At the outset we note that the jury instruction above is an almost verbatim recitation of the Restatement (Second) of Torts § 343 (1965). Our Supreme Court has found it proper to adopt the language of § 343; however, the section clearly sets out a standard of care owed to an *invitee* by a possessor of land as defined in the Restatement (Second) of Torts § 332 (1965).

The trial court's reliance on the above-cited excerpt is misguided for two reasons. First, Decedent's status upon entering the land was that of a *licensee*, not an invitee. "These are not self-defining terms, and in applying them to a set of circumstances we are guided by the definitions in the Restatement (Second) of Torts § 328–343 (1965), which have been adopted by Pennsylvania law." *Wiegand By Wiegand v. Mars National Bank*, 308 Pa.Super. 218, 221, 454 A.2d 99, 101 (1982).[4] The facts before us are not disputed. Illustrated in the record is a familial relationship in which Decedent's purpose in attempting to enter the home was to briefly bid good night to Appellee and his family. (N.T. 32). Moreover, there is no evidence to sup-

---

**4.** § 322. Invitee Defined

(1) An invitee is either a public invitee or a business visitor.
(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

§ 330. Licensee Defined.

A licensee is a person who is privileged to enter or remain in land only be virtue of the possessor's consent.
*See* comment H(3).

port the theory that Decedent's presence on the property was prompted by any business dealings inuring to Appellee's benefit. Likewise, we note that Appellant-Schmidt was not in possession of the property. This further underscores the inappropriateness of the jury instruction to the facts of the case before us.

Second, the trial court further confounded the appropriateness of this excerpt by instructing the jury that the law outlined previously was "the duty that Hipps and Schmidt had to Kobylinski under the issue of negligence." *See* excerpt above. For reasons set forth in the beginning of this discussion, it was erroneous to place both defendants on the same footing in reference to the issue of negligence.

Under the facts of this case, it is clear that Appellant, as an owner out of possession, could not be held liable for Decedent's death according to Pennsylvania law. Appellant's motion for judgment n.o.v. should have been granted. Appellee's failure to warn Decedent, as a social guest, of the hazardous stairwell was a violation of a duty owned by the tenant.

Having determined that Appellant should have been awarded a judgment n.o.v., we are faced with this decision's effect upon the jury's finding that Decedent was 5% negligent and Appellee was 25% negligent. "We are constrained to agree that an attempt by a court to reapportion negligence in this case would be speculative. The issues of damages, however, has been fairly tried." The only issue requiring retrial is the apportionment of damages between Decedent and Appellee. *Henze v. Texaco, Inc.*, 352 Pa.Super. 538, 546, 508 A.2d 1200, 1205 (1986).[5]

Judgment reversed and case remanded with directions to enter judgment n.o.v. in favor of Appellant, and for a new trial on the issues of the causative negligence only of

---

5. Our decision of the issue concerning the propriety of the jury instructions given forecloses the need to address the remaining charges of error advanced by Appellant.

Decedent and Appellee. Jurisdiction of the court relinquished.