## DeRafelo v. DeCicci

*Leonard B. Edelstein,* for plaintiffs.
*Richard L. Cantor,* for defendants DeCicci.
*Gary P. Urtz,* for defendants Rudolph.

WOOD, *J.,* June 22, 1995—On November 1, 1986, Patrick and Robin DeRafelo, the plaintiffs in the above-captioned matter, visited the home of their friends, Robert and Susan Rudolph, who are two of the defendants in the above matter. The Rudolphs had rented their home from Anthony J. and Cynthia DeCicci, who

are the other set of defendants. It was an older home, which the DeCiccis had fixed up. It is uncontested that Anthony DeCicci was familiar with proper construction practices.

Among other things, the DeCiccis had done repairs to the second floor bathroom. Access to this bathroom was obtained by stepping from the hallway down into the bathroom. The height of the riser between the bathroom and the hallway was some 10-1/4", which was higher than was customary under then-current practices in residential homes. The contours of the step itself were perfectly visible to anyone who looked.

On the evening in question, Robin DeRafelo found that she needed to go to the bathroom, and she ascended to the second floor to use the second floor bathroom. According to her own testimony, defendant Rudolph turned on a light switch at the bottom of the stairs, which lighted the hallway. She went to the bathroom door, and pulled it open towards her, and simultaneously reached inside to find the light switch. As soon as she found the light switch, however, she "dropped into the bathroom" (N.T. 112), and injured her leg.

Following the presentation of plaintiffs' case, I entered a compulsory nonsuit in favor of defendants Anthony and Cynthia DeCicci. I did so based on my understanding that a landlord out of possession is not responsible for conditions on the premises unless one of the six exceptions set forth in *Dorsey v. Continental Associates,* 404 Pa. Super. 525, 529, 591 A.2d 716, 718-19 (1991) applies. Plaintiffs now argue that *Dorsey's* exception number 3 is applicable, to wit: "if the lessor has knowledge of a dangerous condition ex-

isting on the demised premises at the time of transferring possession and fails to disclose the conditions to the lessee. . . ." *Id.* at 530, 591 A.2d at 719. As I understand it, it is plaintiffs' position (1) that the DeCiccis were, or should have been, aware that the height of the step created a dangerous condition, given Anthony DeCicci's knowledge of construction practices, and should have so informed the Rudolphs; and (2) that the Rudolphs, because of their lack of expertise, did not (and could not have been expected to) become aware of the condition themselves.

It seems to me clear beyond cavil that the Rudolphs were just as aware of the existence, appearance, height, and configuration of the step as the DeCiccis. The only thing the Rudolphs did not know was that the actual height of this step was greater than the construction standards for risers generally in the industry.

"Pennsylvania courts repeatedly have recognized the validity of the principles set forth in Restatement (Second) of Torts §§355-362 governing the liability of lessors to persons who enter upon that land." *Bleam v. Gateway Professional Center Associates,* 431 Pa. Super. 145, 148, 636 A.2d 172, 173 (1993).

The relevant section of the Restatement (Second) of Torts is section 358 which, in pertinent part, reads as follows:

"Undisclosed dangerous conditions known to lessor.

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to . . . others upon the land with the consent of the lessee . . . for

physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk. . . ."

Section 358 uses as an illustration a situation where A leases a building to B, and there are joists underlying the living room floor which are so flimsy that they may collapse. The joists do collapse, and guests of B are injured. Under these circumstances, A is liable to the guests.

This makes sense. B had no way of knowing that the joists were defective, and the condition definitely had a potential for danger. But it seems to me, with all due respect, that the point which has eluded counsel in this case is that we are not dealing with a latent defect. We are not dealing with a trap for the unwary. What we *are* dealing with is a step of unusual configuration which was there for anyone to see, the Rudolphs included. To me, the fact that they might not have known or realized that construction standards called for a lesser height is immaterial. In the words of the Restatement, this particular lessor had every reason to believe that his lessee would "discover the condition."

It is perhaps on the basis of similar logic that the Superior Court decided, in the case of *Kobylinski v. Hipps,* 359 Pa. Super. 549, 519 A.2d 488 (1986) that a landlord would be granted judgment n.o.v. in a case involving a visitor to the tenant's premises who fell

down an unguarded stairwell. In *Kobylinski,* referring to the question of disclosure of a dangerous condition, the court observed that "it is patently clear that the unguarded condition of the outside stairwell was conspicuous at the time the lease was executed and that appellee never questioned appellant about its safety." *Id.* at 555, 519 A.2d at 491. It is important to note that it was the *tenant's* knowledge of the condition, and not the *visitors* that was critical to the question of the *landlord's* responsibility.

To summarize, if there was indeed a dangerous condition on these premises, it was as obvious to the tenants as it was to the landlord. Plaintiffs had other troubles with their case, as evidenced by the fact that the ensuing trial resulted in a verdict in favor of defendants. However, at the time I entered my nonsuit, I did so on the basis of plaintiffs' failure to bring themselves within any of the six *Dorsey* exceptions, and I persist in the belief that that reasoning and that ruling were correct.

### ORDER

And now, June 22, 1995, based on the foregoing reasoning, plaintiffs' motion to take off the nonsuit is denied.