# Beatty v. Lee's Woodland Lanes

*Robert A. Cinpinski,* for plaintiff.
*Thomas W. Smith,* for defendant.

NICKLEACH, *P.J.,* June 6, 2005—Before the court for disposition is the defendants' motion for summary judgment. This negligence action arises out of an accident which occurred October 10, 1999, at Lee's Woodland Lanes, a bowling alley in Leechburg, Pennsylvania. The plaintiffs are Christine L. Beatty and Lonnie Beatty, wife and husband. The named defendants are Lee's Woodland Lanes, Continental Bowling Partnership, and Richard Snyder, Joseph Tamburino and Walter Zimmerman (the partners). Mrs. Beatty has sued under a negligence theory for injuries she allegedly received when she slipped and fell on an oiled bowling lane while attempting to retrieve her 18-month-old son. Mr. Beatty has sued for loss of consortium. The pertinent facts are as follows.

## STATEMENT OF THE FACTS

On September 30, 1988, Continental Bowling Partnership purchased the real property and bowling alley facility known as Lee's Woodland Lanes. Defendants' answer to interrogatory no. 2. The partnership purchasing the property consisted of Richard Snyder, Joseph Tamburino and Walter Zimmerman. See deed attached to complaint; August 25, 1988 partnership agreement attached to defendants' response to request for production of document.

The bowling alleys and bowling equipment were already in existence on site when the real property was acquired and the bowling alley had already been operating as a business open to the public. Answers to interrog. nos. 4, 53. *No alterations of any substance* had been made to the bowling lanes *since the bowling business was acquired by the partnership* in 1988. Answer to interrog. no. 57. (emphasis added)

After the partnership purchased the property, it leased the premises to Continental Bowling Corp. (the Corporation), a corporation which defendants Snyder, Tamburino and Zimmerman had formed on May 3, 1988.[1] Def's answer to interrog. no. 8. The corporation commenced operation of Lee's Woodland Lanes in October 1988. *Id.*

There was no written lease between the partnership and the corporation, nor was there any public record in-

---

1. Although defendants sometimes refer to the corporation as Continental Bowling Inc., the certificate of incorporation and other corporate documents show that the name of the corporation is Continental Bowling Corp. See certificate attached to brief in response to motion for summary judgment.

dicating that the bowling alley business had been leased or that the bowling alley business was being operated by anyone other than the record owner of the real estate (the partnership). Answer to interrog. nos.10, 11 and 12. The corporation operated the bowling alley business under the names Lee's Lanes and Lee's Woodland Lanes and held itself out to the public as doing business under those names. Answers to interrog. nos. 14 and 15. Neither the corporation nor the partnership ever registered Lee's Woodland Lanes or Lee's Lanes as a fictitious name. Answer to interrog. no. 20.

Both the partnership's mailing address and the corporation's mailing address are R.D. #1, Box 409, Vandergrift, Pennsylvania, the same address as Lee's Woodland Lanes. Answer to interrog. no. 62.[2] The partnership's office, place of business and records and the corporation's office are located at Lee's Woodland Lanes, R.D. #1, Box 409, Vandergrift, Pennsylvania. Answer to interrog. no. 61; see 1999 Corporation Income Tax Return attached to brief in response to motion.

The three shareholders of the corporation at the time of plaintiff's accident in 1999 were Zimmerman, Snyder and Tamburino. Answer to interrog. no. 24. "On the date of the accident, the president of Continental Bowling Corp. was Joseph S. Tamburino, the secretary was Richard Snyder, and the treasurer was Walter Zimmerman. Joseph S. Tamburino, as of the date of the accident, was in the process of retiring and had little to no involve-

---

2. The telephone book listing for Lee's Woodland Lanes gives its address as R.D. #1, Box 409, Vandergrift. See copy of telephone book listing attached to plaintiff's brief in opposition to motion for summary judgment.

ment in the day-to-day operation of the bowling business. The responsibilities for the day-to-day operations fell to Walter E. Zimmerman and Richard Snyder. Walter E. Zimmerman was primarily in charge of the mechanical operations of the bowling alley, such as the pin setting machines, ball returns, etc. Richard Snyder dealt more with the part of the operation involving the front desk, leagues, birthday parties, etc." Answer to interrog. no. 26.

In response to the question, "Have any of the defendants ever performed work on behalf of, or with regard to, the real estate or the entity that owns said real estate . . . ? If so, identify what work, duties and responsibilities were performed, when and by whom," defendants replied, "See preceding answers." Answer to interrog. no. 27. Defendants then deny that the partnership had performed any work with regard to the bowling alley business, stating that Snyder and Zimmerman performed the work outlined above in their capacities as officers of Continental Bowling Corp. Answer to interrog. no. 28. "As of the date of the accident, . . . Tamburino, . . . Zimmerman, and . . . Snyder had responsibilities for the management, operation, maintenance and policy making of the bowling alley business." Answer to interrog. no. 32.

Asked who was responsible for researching, reviewing, inspecting, establishing, maintaining and monitoring of safety policies and procedures, as well as for decisions regarding the same *for the owners of the real estate at the time of the accident,* defendants responded, "As of the date of the accident, *no delegation of specific duties regarding safety policies and procedures had been*

*established for Continental Bowling Partnership. However, to the extent that any such safety policies or procedures were instituted, they would have been instituted by Walter E. Zimmerman and Richard Snyder.*" Answer to interrog. no. 33. (emphasis added)

Both families and children were permitted to bowl at almost any time of day at Lee's, except for the time periods when adult nighttime leagues were bowling. Answer to interrog. no. 41. Lee's "has always encouraged the participation of children." Answer to interrog. no. 49. Plaintiffs and their three children were permitted to enter the premises on October 10, 1999, and bowl. Answer to interrog. no. 50. Mrs. Beatty was not a regular or experienced bowler. Beatty affidavit, para. 7, attached to plaintiffs' brief in response to motion for summary judgment. Prior to the date and incident in question, Mrs. Beatty may have bowled on one or two occasions. *Id.* at para. 8.

Before Lonnie Jr. and her other two children began to bowl, Mrs. Beatty gave them certain instructions. She instructed the children to pick up the bowling ball, walk down the approach area, swing the ball back, let go of it, and roll the ball down the lane. Beatty depo. at 47-48, exhibit A of brief in support of motion for summary judgment. She could not be certain that she told Lonnie not to cross the foul line, although she thought she probably did. *Id.* at 48. Mrs. Beatty did demonstrate for the children where they were to stop and release the ball, which was *behind* the foul line. *Id.*

When he bowled, Lonnie was not able to swing the ball back and bring it forward as his mother had demonstrated. *Id.* at 49. Instead, he would pick the ball up with

two hands, push it, and let go of it. *Id.* He would walk up to the foul line and roll the ball from there. *Id.* Mrs. Beatty would walk along with him and accompany him to the line. *Id.* Lonnie had bowled approximately five frames prior to the incident in question. *Id.* at 47.

Just prior to the incident, Mrs. Beatty helped Lonnie pick up the ball and walk to the beginning of the lane and told him to push the ball. *Id.* at 50. This time, Lonnie did not push the ball very hard and it rolled down the lane quite slowly. *Id.* Lonnie proceeded to cross the foul line to go after the ball. *Id.* He was not running, but "moving briskly," "trotting pretty good down there." *Id.* at 51, 53.

Moving quickly, Mrs. Beatty took approximately two large steps past the foul line to catch her son. *Id.* at 51-52. She estimated that when she caught Lonnie Jr., she was approximately four or five feet past the line marking the end of the approach lane, six feet at the most. *Id.* at 51-52. When she picked Lonnie up just above his waist, her feet went out from under her and she fell down on her buttocks and tailbone. *Id.* at 51-53. She was not able to break her fall because she was holding Lonnie with both hands. *Id.* at 50-51. When she fell, Lonnie fell as well, hitting the back of his head on the lane. *Id.*

At the time of the incident, Mrs. Beatty was not aware that the bowling lanes were oiled and that the lane area past the foul line was significantly more slippery than the area behind the foul line. *Id.* at para. 9. There were no signs or other materials on display at Lee's that day that warned or advised bowlers or other members of the public not to enter the portion of the bowling alley past the foul line. Answer to interrog. no. 38. There were also

no signs or materials on display warning or advising bowlers or others that this portion of the lane was more slippery than the area behind the foul line, or of any dangers of entering this portion of the alley. Answer to interrog. no. 39.

In addition, there were no training or other orientation sessions for first-time, novice or casual bowlers, such as Mrs. Beatty and her family, to provide them with notice or warning of the increased degree of slipperiness of the lane past the foul line, to warn them that they should not enter the bowling lane past the foul line, and to notify them that, if they needed to enter that area, extreme caution should be exercised. *Id.* at para. 13.

The American Bowling Congress (ABC) is an organization that approves bowling alleys "in order to maintain uniformity among them." Affidavit of Richard Snyder, an officer of Continental Bowling Inc., para. 4. "The ABC has promulgated rules and guidelines specifying the amount, thickness, and location of dressing that must be applied to bowling lanes." *Id.* at para. 5. The ABC rule regarding lane dressing reads as follows:

"(1) Dressing must be distributed from edgeboard to edgeboard for the entire predetermined distance down the lane (for example, and without limiting the distance, 35-40 feet from the foul line). Following any application of dressing, in the dressed portion of the lane there shall be a minimum of three units of dressing at all points on the lane surface.

"A unit is defined as a measurement of dressing film thickness equivalent to .0167 cubic centimeters of dressing per square foot of lane surface as measured by ABC/WIBC approved lane dressing measuring equipment.

"Any stripping (cleaning) of dressing from the lanes must be uniform from edgeboard to edgeboard, and at least from the headpin to the distance to which dressing has been applied." *Id.* at para. 6.

Bowling alleys are subject to inspections by ABC as set forth in the following ABC regulations:

"Any WIBC/ABC local association representative designated by the inspection coordinator, as well as any authorized representative of WIBC/ABC, shall be permitted at any time to inspect a certified center for compliance with bowling equipment specifications and lane dressing requirements; and to inspect all equipment the center uses to maintain its lanes.

"*A minimum of one inspection per season shall be required at each center. . . ." Id.* at para. 8. (emphasis added)

"Lee's Woodland Lanes uses an automatic oiling machine to apply oil to the lanes." *Id.* at para. 9. "On October 10, 1999, the dressing on all of the lanes at Lee's Woodland Lanes was in compliance with ABC regulations." *Id.* at para. 10.

The sheriff served Lee's Woodland Lanes by serving Walter Zimmerman, "owner," at the bowling alley premises, R.D. #1, Box 409, Vandergrift, Pennsylvania. See sheriff's return of service dated October 24, 2001. The sheriff served the partnership in the same manner. *Id.* The sheriff also served Zimmerman and Richard Snyder at Lee's Lanes as individuals in their own right.[3] See sheriff's returns dated October 24, 2001.

---

3. Tamburino was never served. According to the return of service, Snyder and Zimmerman told the sheriff's deputy that Tamburino lived in Philadelphia, Pennsylvania, and had not been a partner since April 2000. See sheriff's return dated October 24, 2001.

## DISCUSSION

The standard to be used in determining whether to grant a motion for summary judgment is well-established. Pa.R.C.P. 1035.2(2) provides that summary judgment shall be granted "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Kelly v. Ziolko,* 705 A.2d 868, 870 (Pa. Super. 1997). Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of proving that there is no genuine issue of material fact and that judgment as a matter of law is appropriate. *Butterfield v. Giuntoli,* 448 Pa. Super. 1, 10, 670 A.2d 646, 651 (1995).

Defendants seek summary judgment in their favor on two general grounds. First, the defendants allege that none of the named defendants was in possession of the bowling alley at the time of the accident, and that summary judgment should be granted to all defendants on that basis. Second, defendants argue that, because oiled bowling lanes are a condition inherent in the sport of bowling, the "no-duty" rule applicable to patrons of amusement facilities bars plaintiffs from recovery.

The first issue we will address is whether summary judgment should be granted to all the named defendants

on the basis that only the corporation was in possession of the bowling alley premises and it is not a named defendant in this case. According to defendants, the premises known as Lee's Woodland Lanes were at the time of the accident in the sole and exclusive possession of "Continental Bowling Inc." Motion for summary judgment, paras. 8 and 9. Defendants also state "there was no legal entity known as Lee's Woodland Lanes." *Id.* at para. 10. On the basis that only the corporation was in possession of Lee's Lanes, defendants seek summary judgment in favor of the partnership, Snyder, Tamburino and Zimmerman, and "Lee's Lanes."

This presents the threshold issue of whether the corporation is in fact a party in this case. The case law governing here is found under Pa.R.C.P. 1033, which states in pertinent part: "*A party,* either by filed consent of the adverse party or *by leave of court, may at any time* change the form of the action, *correct the name of a party or amend his pleading.*" *Id.* (emphasis added)[4]

The test for whether or not to allow the name of a party to be corrected is "whether the right party was sued but under a wrong designation, or whether a wrong party was sued and the amendment was designed to substitute another and distinct party." *Gozdonovic v. Pleasant Hills Realty Co.,* 357 Pa. 23, 29, 53 A.2d 73, 76 (1947).[5]

---

4. In their brief in response to defendants' motion for summary judgment, as well as in their oral argument, plaintiffs have asked for permission to amend the caption and complaint to include Continental Bowling Corp. as a named party.

5. If the amendment would substitute another and distinct party, a plaintiff is precluded from doing so after the expiration of the applicable statute of limitations. Hence, the Beattys would be precluded from adding the corporation as a defendant now if it is deemed to be

In *Gozdonovic,* plaintiff named "Pleasant Hills Realty Company, a corporation" as a defendant in his negligence action for injuries received when a realty company employee left his car unattended, causing the car to crash into plaintiff. After plaintiff subsequently discovered that the realty company was not a corporation but a partnership, he moved to amend and was permitted to do so, although the statute of limitations had already run. *Id.* at 29, 53 A.2d at 76.

The Supreme Court affirmed the trial court's ruling, reasoning that the amendment "did not substitute any new parties upon whom the liability could be imposed; *the action was still directed against the entity which was [the worker's] employer, and the designation of that entity could properly be changed from that of a corporation to partnership."* *Id.* at 29-30, 53 A.2d at 76. (emphasis added)

In *Powell v. Sutliff,* 410 Pa. 436, 189 A.2d 864 (1963), plaintiff originally filed suit against "Ellis Sutliff and Leo E. Sutliff, individually and as partners, t/d/b/a Sutliff Chevrolet Company" and served the writ of summons on "Leo E. Sutliff, the individual in charge of the Chevrolet Company." *Id.* at 437, 189 A.2d at 865. In his subsequently-filed complaint, the plaintiff designated defendants in the *identical* manner. *Id.* After the statute of limitations expired, plaintiff discovered that Sutliff Chevrolet was a corporation, not a partnership, and thereafter moved to amend his complaint to change the designation of the defendant company. *Id.* The trial court refused to permit the amendment, stating this would im-

---

another and distinct party, because the applicable statute of limitations expired in October 2001.

permissibly introduce a new party into the action after the statute of limitations had run. *Id.*

The Supreme Court reversed, holding that the requested amendment should have been allowed because "the original complaint sought to impose liability against the assets of the business entity known as Sutliff Chevrolet Company. As in *Gozdonovic,* the proposed amendment merely seeks to correct the designation of that business entity, in this case, from a partnership to a corporation." *Id.* at 438-39, 189 A.2d at 865. (footnote omitted)

In the instant case, defendants admit:

*"The entity operating the bowling business, Continental Corp., has never held itself out to the public as doing business under the name of Continental Bowling Partnership. It has,* however, *held itself out to the public as doing business under both Lee's Woodland Lanes and Lee's Lanes.* No fictitious names have been registered." Defendants' answer to interrog. no. 20. (emphasis added)

Plaintiffs had no way of knowing that the corporation was the legal entity in possession of the bowling alley. Public property records indicated only that the partnership owned the property, there was no public record of any lease, the telephone book listed the name of the bowling alley as Lee's Woodland Lanes, the bowling alley business held itself out to the public and advertised itself as Lee's Woodland Lanes, and there was no fictitious name filing.[6]

---

6. Although in their summary judgment motion, defendants state that there was no legal entity known as Lee's Woodland Lanes, the court notes that counsel initially entered its appearance for "*Lee's Woodland Lanes,* Richard Snyder, Joseph Tamburino, Walter Zimmerman

The complaint thus named the partnership, the three individual partners, and *"Lee's Woodland Lanes, whose status as a legal entity is unknown,* however, who at all times relevant hereto, was *maintained as a place of business situate at R.D. #1 Box 409, Vandergrift, Parks Township . . . 15690."*[7] Complaint, para. 3. (emphasis added)

The court finds that given all of the above facts, when plaintiffs filed suit against Lee's Woodland Lanes, they filed suit against the corporation. Thus, amendment of the complaint to correct the name and averments regarding Lee's Woodland Lanes will be permitted. See also, *Fretts v. Pavetti,* 282 Pa. Super. 166, 171-72, 422 A.2d 881, 882-83 (1980) (statute of limitations did not prevent amendment of pleadings directing suit against sole proprietor of store in which plaintiff was injured, rather than originally designated corporation, in that counsel for plaintiffs logically assumed that business was a corporation due to its improper registration under Fictitious Names Act, and corporation named did not actually exist and sole proprietor had been only person involved since outset of action); *Thomas v. Duquesne Light Co.,* 376 Pa. Super. 1, 7, 545 A.2d 289, 292 (1988) (tort plaintiffs were entitled to amend complaint so as to allege that sole proprietorship defendant was in fact corporation, although statute of limitations had run; complaint

---

and Continental Bowling Partnership, defendants," and has continuously filed documents on behalf of all of those named defendants.

7. The writ of summons addressed to Lee's Woodland Lanes was served on Walter Zimmerman, an employee, officer and shareholder of the corporation, at the corporation's place of business. Thus, the corporation was properly served. See sheriff's return dated October 24, 2001.

was served by handing copy to corporate treasurer and corporate president signed answer to complaint in her capacity as president of corporation); *Waugh v. Steelton Taxicab Co.,* 371 Pa. 436, 89 A.2d 527 (1952); *Paulish v. Bakaitis,* 442 Pa. 434, 440, 275 A.2d 318, 320 (1971) and *Thomas, supra* (delay in seeking leave to amend not dispositive).

We next address the argument that the defendants were not in possession of the bowling alley premises and therefore cannot be liable to plaintiffs. Since the corporation admittedly was in possession of the bowling alley facilities at all pertinent times, this argument obviously does not apply to the corporation. Defendants make the following argument for why the partnership and named individuals are *not* liable in this case:

"The law in Pennsylvania is clear that liability for injuries occurring as a result of the condition of the premises *can attach only to a party who has possession and control of the area where the injury occurred. Williams v. Wolf,* 169 Pa. Super. 628, 84 A.2d 215 (1951). Whether a person or party is a 'possessor' of land is determined on the basis of the Restatement (Second) of Torts, [section] 328(E). *Blackman v. Fed. Realty Inv. Trust,* 444 Pa. Super. 411, 664 A.2d 139 (1995). Section 328(E) states:

"Section 328E Possessor of land defined

"A possessor of land is

"(a) a person who is in occupation of the land with intent to control it or

"(b) a person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it or

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

"The rationale for the rule regarding possessors of premises is that the person in possession of the property ordinarily is in the best position to discover and/or control its dangers. *Smith v. King's Grant Condominium,* 418 Pa. Super. 260, 267, 614 A.2d 261, 265 (1992), . . . *aff'd,* 537 Pa. 51, 640 A.2d 1276 (1994)." Brief in support of motion for summary judgment at 5.

Defendants also note that from the time a lease begins, the tenant is the possessor of the leased premises, citing *2401 Pennsylvania Avenue Corporation v. Federation of Jewish Agencies of Greater Philadelphia,* 319 Pa. Super. 228, 466 A.2d 132 (1983), *aff'd,* 507 Pa. 166, 489 A.2d 733 (1988). *Id.* at 6. For all these reasons, according to defendants, after the partnership leased the bowling alley to the corporation in 1988, the partnership and the individual partners were no longer in possession of the premises.

However, the evidence shows that both the partnership and the corporation kept their offices at the bowling alley, kept records there and conducted their business there. Both the partnership and the corporation also utilized Lee's mailing address as their mailing address. Two partners, Zimmerman and Snyder, conducted the day-to-day affairs of the bowling alley, ostensibly as officers and employees of the corporation. The three partners were the corporation's only shareholders and officers. Given the above, the court finds that there is a genuine issue of material fact as to whether the partnership and the corporation were in joint possession of the bowling alley

premises during any time relevant to the lawsuit. See *Kobylinski v. Hipps,* 359 Pa. Super. 549, 555, 519 A.2d 488, 491 (1986) (landlord may be liable if it has retained control over a portion of the property which is necessary to the safe use of the premises or shares with the lessee the right to possess any section of the property). Therefore, the court will not grant summary judgment to the partnership or to the individual partners on the basis that they were not in possession of the bowling alley.

Moreover, while "[o]rdinarily, a lessor not in possession is not liable in trespass to invitees of his lessee, . . . section 359 . . . of the Restatement (Second) of Torts creates an exception to this general rule." *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 89 n.10, 394 A.2d 546, 553 n.10 (1978). Section 359 provides:

"Land leased for purpose involving admission of public

"A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor

"(a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and

"(b) has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and

"(c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it." Restatement (Second) of Torts §359 (1965).

Pennsylvania has adopted section 359. *Jones* at 89 n.10, 394 A.2d at 553 n.10. The record shows that the bowling alley had been an operating business open to the public prior to the partnership's purchase of it in 1988, and that neither the partnership nor the corporation subsequently made any substantial changes to the facilities. Given this history, a genuine issue of material fact exists as to whether the partnership might be liable to plaintiffs pursuant to section 359. For all these reasons, the court will not grant summary judgment in favor of the partnership or the named individual partners.

We turn next to the argument that as a matter of law, defendants had no duty to Mrs. Beatty because Lee's Lanes is an amusement facility, and the risk of a bowler being injured while bowling is inherent in the nature of the activity itself.

In support of this "no-duty" proposition, defendants cite *Romeo v. The Pittsburgh Associates d/b/a The Pittsburgh Pirates,* 787 A.2d 1027, 1030 (Pa. Super. 2001), which restated the general rule in Pennsylvania that "operators of a baseball stadium, amusement park, *or other such amusement facilities have no duty to protect or to warn spectators from 'common, frequent and expected' risks inherent in the activity." Id.,* citing *Hughes v. Seven Springs Farm Inc.,* 563 Pa. 501, 509, 762 A.2d 339, 343 (2000). (emphasis added)

In *Romeo,* the plaintiff was injured by a foul ball while sitting in the stands during a Pittsburgh Pirates baseball game. The court said, "[T]he risk of being struck by a foul ball while sitting in the bleachers is exactly the type of 'common, frequent, and expected' risk inherent in a baseball game" and held that the defendant ball club had

no duty to warn or protect plaintiff in that situation. *Id.* at 1031.

*Romeo* contrasted its case with the fact situation in *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978). In *Jones,* the Pennsylvania Supreme Court upheld a jury verdict for a plaintiff who had been struck by a foul ball during pregame batting practice while using the interior walkway from the stadium's outer concourse to the seats. The Supreme Court noted in *Jones,* "Only when the plaintiff introduces adequate evidence that the amusement facility in which he was injured deviated in some relevant respect from established custom will it be proper for an 'inherent-risk' case to go to the jury." *Id.,* 483 Pa. at 84, 394 A.2d at 550.

The court further explained that an amusement facility "will be liable for injuries to his patrons only where he fails to 'use reasonable care in the construction, maintenance and management of (the facility), *having regard to the character of the exhibitions given and the customary conduct of patrons invited.'* " *Id.* at 549. (citations omitted) (emphasis in original)[8]

The *Jones* court found that the facts before it presented exactly such a case, "[since] the openings built into the wall over right field are an architectural feature of Three Rivers Stadium which are not an inherent feature of the spectator sport of baseball. They are not compelled by,

---

8. See *Telega v. Security Bureau Inc.,* 719 A.2d 372 (Pa. Super. 1998) (no duty rule did not bar recovery by spectators at professional football game against provider of stadium security service for injuries incurred during disturbance among fans seeking souvenir ball in end zone).

or associated with, the ordinary manner in which baseball is played or viewed." *Id.* at 86, 394 A.2d at 551. (footnote omitted) Thus, the court ruled the defendant could be found liable to the plaintiff for what was, in essence, a case alleging negligent design.

The *Jones* court cautioned that the "no-duty" rules "apply only to risks which are 'common, frequent and expected,' *Goade, supra,* and *in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeable dangerous conditions not inherent in the amusement activity."* *Id.* at 85, 394 A.2d at 551. (emphasis added)

*Jones* went on to discuss the duties of a possessor of land toward business invitees:

"Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement (Second) of Torts §§341A, 343, 343A (1965). *With respect to dangers which are obvious, the Restatement rule provides:*

" 'A possessor of land is *not liable* to his invitees for physical harm caused to them *by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.*' Restatement (Second) of Torts §343.

"Comment f to that section is worthy of note:

" '*There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection.*'

"Thus, an invitee in certain circumstances must be protected even from obvious dangers." *Id.* at 88, 394 A.2d at 552. (emphasis added)

In the instant case, defendants argue that Mrs. Beatty is deemed to have anticipated the risk of slipping on oiled lanes because oiled bowling lanes are inherent to the sport of bowling.[9] However, the slippery condition of the lanes past the foul line was a "foreseeable dangerous condition not inherent in the amusement activity," because under ordinary and usual circumstances one need not and would not be expected to step into the highly oiled area past the foul line to bowl. See *Jones* at 85, 394 A.2d at 551.

Plaintiffs allege that "based upon the nature of defendants' business, the defendants' invitation to families to bring young children and to utilize the defendants' facilities and the defendants permitting the plaintiff and others similarly situate to do so, it is reasonably foreseeable that the plaintiff's children would enter upon the 'lane' area of the premises, and that the plaintiff, Christine L. Beatty, as the parent or other supervising individual, would immediately enter upon the 'lane' to retrieve said young child, and that upon doing so, she would fall and be injured." Complaint at para. 24.

---

9. The difficulty of separating the inquiry of whether a duty exists from the question of assumption of risk necessitates that the two will sometimes be discussed in tandem rather than separately. See *Carrender v. Fitterer,* 503 Pa. 178, 188, 469 A.2d 120, 125 (1983) (citations omitted) (emphasis added) (*"to say that the invitee assumed the risk of injury* from a known and avoidable danger *is simply another way of expressing the lack of any duty* on the part of the possessor to protect the invitee against such dangers.").

Here, plaintiffs are alleging that the defendants failed to exercise reasonable care in the *management* of Lee's Lane's by failing to employ reasonable procedures to notify and warn patrons, especially those with small children, of the increased slipperiness of the bowling lanes past the foul lines and of the dangers of traversing that part of the lane. See *Jones,* 483 Pa. at 81, 394 A.2d at 549 (an operator of a place of amusement will be liable for injuries to his patrons where he fails to use reasonable care in the construction, maintenance and management of the facility).

The court finds that walking out on the lane area past the approach area and foul line is not a risk inherent to the sport of bowling. Thus, the no-duty rule does not apply and plaintiffs are entitled to show that the defendants breached a duty of reasonable care to, at the very least, provide some instruction and warnings regarding the increased slipperiness of the lane area. For all the above reasons, defendants' motion for summary judgment is hereby denied.

An appropriate order will be entered.

## ORDER

And now, June 6, 2005, after careful consideration of the entire record, it is ordered, adjudged and decreed that defendants' motion for summary judgment against plaintiffs, and in favor of defendants, is hereby denied. It is further ordered, adjudged and decreed that plaintiffs are hereby granted leave to amend their complaint to correct the name of defendant Lee's Woodland Lanes to Continental Bowling Corp., the legal entity which conducted business as Lee's Woodland Lanes.